## KLINGLER, ET AL., v. BICKEL, ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF BUTLER COUNTY.

Argued October 18, 1887—Decided October 31, 1887.

1. A borough ordinance, prohibiting the erection of wooden buildings within certain prescribed limits, enacted under the provisions of the act of June 3, 1885, P. L. 55, is not unconstitutional under the inhibitions of article III., section 7, of the constitution of Pennsylvania, or of article XIV., section 1, of the constitution of the U. S.

2. Such an ordinance contained a section providing that any person violating its provisions should be compelled to remove the structure or pay the cost of removal with the addition of twenty per centum, and a penalty of fifty dollars for every day the structure should remain standing : Held, that the power of council was not limited to enforcing the payment of the fine imposed, and that the council by its officers and agents might demolish a wooden building in course of construction within the prescribed limits after notice that the said ordinance would be enforced, without liability on the part of the officers or agents effecting the removal to an action of trespass.

3. Fields v. Stokley, 99 Pa. 306, distinguished.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 140 October Term 1887, Sup. Ct; court below No. 75 June Term 1886, C. P.

This was an action of trespass vi et armis q. c. f. brought by Henry Bickel and Wm. G. Biehl, partners as Bickel & Biehl, against H. J. Klingler, George Walter and sixteen others. The plea was not guilty.

On April 7, 1886, the burgess and town council of the borough of Butler (subject to the provisions of the general borough act of 1851), under the authority of the act of June 3, 1885, P. L. 55, passed an ordinance with the following provisions :—

Section 1. Be it ordained by the burgess and town council of the borough of Butler, and it is hereby ordained by authority of the same, that from and after the 20th day of April, A. D. 1886, no person or persons shall erect or cause to be erected any frame or wooden dwelling house, shop, ware-

house, store, carriage house, stable, or other frame or wooden tenement within the following limits, viz.: Main street at the intersection of Penn street, southward, to the intersection of Wayne street, and for one hundred and forty (140) feet on either side of said Main street, from Penn to Wayne streets.

Section 2. No person or persons shall erect or cause to be erected any wooden or frame dwelling house, shop, warehouse, store, carriage house, stable, or other wooden or frame tenement within the following limits without first appearing before a quorum of the members of the town council at their regular place of meeting and obtaining a permit for the erection of such building or buildings, viz.: McKean street from the intersection of Wayne street, north, to the intersection of Penn street and for two hundred and forty (240) feet on the west side of said McKean street, and for one hundred and eighty (180) feet on the east side of said McKean street, from Wayne to Penn streets :

Washington street from the intersection of Wayne street, north, to the intersection of Penn street and for two hundred and forty (240) feet on the east side of said Washington street, and for one hundred and eighty (180) feet on the west side of said Washington street, from Wayne to Penn streets. . . .

Section 3. That any person or persons violating the provisions of this ordinance shall be compelled to remove the structure or pay the cost of removal by council, with the addition of twenty per centum, and also pay a penalty of fifty dollars for every day the same shall remain standing within the limits prescribed in this ordinance, which penalty shall be for the use of the borough of Butler and be collectible as debts of like amount are now collected by law.—

On West Jefferson street, within the limits described in the second paragraph of § 2 of the foregoing ordinance, a compact block of wooden buildings had been erected and for a number of years had been occupied as livery stables. The ground upon which the buildings stood belonged to Charles Duffy. The eastern end of the block was occupied by Bickel & Biehl, liverymen, whose stable, it was alleged, was frequented by disorderly persons in the late hours of the night. On Sunday, May 23, 1886, about 4 o'clock A. M., a fire broke out in the block which entirely destroyed the stables of Sarver, Mitchell,

Charge of Court below.

and Flick and Kennedy, and left but the charred remains of the stable of Bickel & Biehl. On the next morning, May 24, 1886, the burgess and town council met and passed a resolution that the ordinance of April 7, 1886, be enforced to prevent the erection of frame buildings within certain limits embracing the location of the burned stables, and the same morning a copy of said resolution was served upon Charles Duffy, the owner of the ground and also upon each of his tenants, including Bickel & Biehl. On the afternoon of the same day, however, disregarding said resolution and the notice thereof, Bickel & Biehl gathered a number of men and proceeded to erect a wooden building to be used for the same purpose as the one destroyed. The town council then passed a resolution directing the high constable to remove the erection. To avoid a breach of the peace the high constable and his posse were instructed to wait until the workmen left the building before proceeding to remove it. The officer and his men went to the premises after midnight and commenced to tear the building down, but they were driven away. On the morning of May 27, 1886, the high constable, with a number of special policemen, duly appointed and sworn, proceeded to the ground, demolished the structure erected, together with the charred remains of the old building, and piled the lumber upon the lot it had occupied. Thereupon Bickel & Biehl brought this action against the high constable, his posse, and certain members of the town council.

At the trial, on May 4, 1887, before A. L. HAZEN, P. J., the foregoing facts appeared, and the court instructed the jury, inter alia, as follows:—

Then, gentlemen, let us look and see, after the definitions of the words used, for words are to be taken in their ordinary sense as applied by thinking men in the daily course of business and in the light in which the law places upon them a meaning. Ordinances may regulate, but not restrain trade. They must not contravene common right, unless the power to do so be plainly conferred by legislative grant; and in cases where they have such a right, authority to regulate conferred upon towns of limited powers has been held not necessarily to withhold the power to prohibit. I quote that as authority from a Pennsylvania Supreme Court case.

Again, an ordinance must be reasonable and lawful; not inconsistent with the charter of the corporation, nor with any statute of the state; nor with the general principles of the common law of the land, particularly those having relation to the liberty of the subject or the rights of private property. They must therefore be reasonable; consonant with the general powers and purpose of the corporation, and not inconsistent with the laws of the state. They must not be oppressive. The principle of law that ordinances passed under a general authority to enact all such as will be necessary, must be reasonable or they may be void, is well illustrated by the case of Commissioners v. Gas Co., 12 Pa. 318: "They must be impartial, fair and general, as it would be unreasonable and unjust to make, under the same circumstances, an act done by one person penal, and if done by another not penal. Ordinances which have this effect cannot be sustained. Special and unwarranted discrimination or unjust or oppressive interference in particular cases is not to be allowed. They must be general in their nature and impartial in their operation."

Again, a corporation under a general power to make by-laws, cannot make a by-law ordaining a forfeiture of property. To warrant the exercise of such an extraordinary authority by the local and limited jurisdiction, the rule is reasonably adopted that such authority must be expressly conferred by the legislature; and even if the power to declare a forfeiture is conferred, still no person can by ordinance be deprived of his property by forfeiture without notice or without legal adjudication —legal investigation or adjudication. An ordinance in violation of this principle is void, as contrary to the genius of our laws and institutions; and we say to you, gentlemen, that as there has been much stress paid in the argument of this case in regard to what was forfeiture or confiscation—I care not by what name it was called by the counsel—if property was either taken away and disposed of, or rendered useless by action of the parties, it is immaterial what you call it by, if the result is the same. Hence, in order to meet that legal point, we have instructed you in this way, and say to you that we believe this to be the law as interpreted by the Supreme Court of Pennsylvania. Power to fine does not include power to forfeit. Courts hold thereby. That municipal corporations cannot pass

by-laws ordaining a forfeiture, is strictly construed in many instances. . . . . .

Then let us revert and see whether in this there was authority. It is claimed here that they were acting in pursuance of law—an ordinance or by-law passed in pursuance of the warrant of law thereto. Under the act of April 3, 1851, the chief burgess and other municipal officers of the corporation shall have power, first, to enforce all police ordinances, rules and regulations of the corporation; second, to exercise jurisdiction in all disputes between the corporation and individuals arising under the same. Very broad and very full authority; and it may be a subject of inquiry to you, gentlemen, whether under this authority they might not, as there was a dispute between these plaintiffs and the agents, or representatives, if you please, of the town council, who were delegated as defendants, say to you, to go and tear down this building,—under this authority we say to you it was broad enough to have entitled—nay, was it not the duty when that dispute arose to have at least adjudicated the matter with the plaintiffs, whose property they were there to take down, a day in court?

But we will go further as to the authority. Under article XIV., section 1, of the constitution of the United States, we find this among other things : " Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Then again, under the state constitution in article III., section 7 : " The general assembly shall not pass any local or special law authorizing the creation, extension or impairing of liens. Second: Regulating the affairs of counties, cities, townships, wards, boroughs or school districts." They give that entirely to the municipal officers, that they in their judgment may pass upon all such matters as come before them.

Then, gentlemen, we want to construe this act. As we have already stated, this act which we have read in your hearing gives ample power to the authorities to pass an ordinance limiting within the borough of Butler the construction of frame buildings—wooden buildings. Have the council followed the directions? From the phraseology of section 2 of this ordinance, it is only limited to a part of the borough of Butler. As

a matter of law we say to you that when they act under this law of the state authorizing them so to act, that they must make their laws general, operating upon all; and as they have limited it to only a part we say it is defective, and so instruct you. Under section 3, which provides the penal clause, we see no authority there which would warrant' the interpretation that is claimed by the defendants; for we do not find in the act of assembly supporting that ordinance, if supported at all, anything which authorized the tearing down; but they have power wide enough and broad enough to pass an ordinance with a penalty, and authority to pass the ordinance and enforce that penalty, and such a penalty as would protect in every respect the interests of the good people of the borough.

That brings us then, gentlemen, to this question: Were plaintiffs at the time that this building was torn down maintaining a nuisance at that place? If they were, then any person or persons specially aggrieved or injured thereby had a right to abate that nuisance. It is true that a wooden building, though erected contrary to law, is not per se, not of itself, a public nuisance; but it may become such by the manner in which it is used, or allowed to be used. It is not claimed that this building originally was constructed either in violation of law, or had been maintained as a nuisance when originally constructed; and we presume you will have no trouble in determining the fact that at the time the building was torn down it was unoccupied; it was then in process, as plaintiffs say, of repairing; as defendants say, reconstruction. In that condition can it be said to be a nuisance? It is true that a private person not specially aggrieved cannot abate a public nuisance, and especially where the statute provides a remedy for all offences covered by it, that must be followed. But it is well settled that a private person if specially grieved by a public nuisance may abate such public nuisance. A nuisance, whether public or private, may be abated by the party aggrieved so that it is done peaceably and without riot—without a breach of the peace. The reason why the law allows this private and summary method of doing justice is because injuries which are produced by such nuisances require an immediate remedy, and only in cases where the process of law would be too slow to remedy the evil is it admissible; and hence the limitation to

doing so without a breach of the peace. As we have already intimated it brings the main question for you to pass upon, upon which we think this matter turns; was or was not that a nuisance, public or private, such as to justify the defendants. in abating it? The principal question which arises in this case is, was or was not this livery barn, thus torn down by the defendants, a nuisance? Was it such a common nuisance, and therefore a menace and peril to the welfare of the citizens of Butler and to all living in that vicinity, and to all who might pass and repass, who had a perfect right to pass and repass in safety along the public streets and alleys abutting, or to which this property abutted and in that vicinity?

If you find it to be a nuisance then I say that the defendants must justify themselves under that fact, that it was a nuisance, and especially acting in good faith to abate such nuisance, and acting in a reasonable way; not prompted to do it by any desire to do any particular wrong to these plaintiffs. or to their property. They, the defendants, in going there to abate the nuisance must act in good faith; they must discharge. that duty in a reasonable manner. . . . . .

Plaintiffs' counsel ask the court to charge you upon the following points:

1. The keeping of a livery stable is a recognized and lawful business, and the erection and maintenance of a suitable building for that purpose even in the borough is not per se a public nuisance, nor illegal.

A. Affirmed.

2. That a wooden building, though erected contrary to law, is not per se a public nuisance, but it may become such by the manner in which it is used or allowed to be used, and so, too, may a stone, brick or iron building.

A. Affirmed.

3. A wooden building, whether erected or only repaired, but in either case contrary to law, is not per se a public nuisance, although liable to become such by its subsequent use. If, therefore, the jury find that the building torn down by the defendants (if it were) had not yet been used for any purpose whatever, it was not then a public nuisance.

A. Affirmed.

6. If the jury find that the structure torn down had never

been used, then no matter whether it was an erection of a new or the repairing of an old building, it was not a public nuisance. The defendants cannot justify its forcible destruction and the official position of the defendants does not relieve them, or any of them, from personal responsibility.

A. Affirmed.

The defendants ask the court to charge you upon the following points:

1. That the legislature had the power to authorize the town council to pass the ordinance, the enforcement of which is the plaintiffs' alleged cause of action.

A. We decline to affirm this for the reason that we hold that the legislature had not the authority to pass an act limiting the construction of wooden buildings in the bounds located by this ordinance; and that if it would go through the form of so enacting, it would not be a constitutional act; and we hold that the legislature cannot delegate to others what it cannot do itself, in the way of legislation. That the legislature did pass this act which we read in your hearing, and it is ample in every way under which for the council to pass an ordinance we have already instructed you.[6]

2. That under and by virtue of the act of assembly, approved the 3d of June, 1885, the town council, having authority to pass the ordinance, had authority to direct its enforcement by the high constable, by removing any erection attempted to be erected in violation of the same.

A. Refused.[7]

3. If the jury are satisfied that the plaintiffs were attempting to erect the building in question in violation of said ordinance and after special notice had been given them by the town council not to erect the same, the high constable and his officers, under the direction of the chief burgess, were justified in using sufficient force to remove the same, and defendants are not liable to plaintiffs in this action and the verdict should be for the defendants.

A. Refused.[8]

4. The legislature of this commonwealth, by act of 3d of June, 1885, having authorized the town council to pass such ordinances as may be necessary to regulate and prevent the erection of just such buildings as the plaintiffs in this case at-

tempted to erect, the question of the kind and character of ordinance necessary was lodged by said act in the reasonable discretion of the town council, and they having exercised a reasonable discretion in the matter by passing the ordinance in question, it became the law of the borough of Butler, and the chief burgess and his officers had the right to enforce it.

A. Refused.[9]

The jury returned a verdict for the plaintiffs for $300, and judgment being entered the defendants took this writ assigning for error, inter alia:

6. The answer to the defendants' first point.[6]
7. The answer to the defendants' second point.[7]
8. The answer to the defendants' third point.[8]
9. The answer to the defendants' fourth point.[9]

*Mr. Clarence Walker* and *Mr. Lev. McQuiston* (with whom were *Mr. Wm. A. Forquer* and *Mr. Frank M. Eastman*), for the plaintiffs in error:

1. Under §§ 60, 61, 118 of general borough act of April 3, 1851, P. L. 320, with the "power to prevent and remove nuisances," councils have power to abate: 1 Dill. Mun. C. 375, 379, 382, 383; Nolin v. Mayor, 4 Yerg. 163; Fields v. Stokley, 99 Pa. 307; Downing v. McFadden, 18 Pa. 339; King v. Davenport, 96 Ill.——(38 Amer. R. 96).

2. The legislature authorized the borough to enact the ordinance in question: act of June 3, 1885, P. L. 55; Dill. Mun. C., §§ 313, 379. The constitutionality of that act cannot be questioned. It is a general, not a local act inhibited by the constitution, art. III., section 7. A town council is not the general assembly. A municipality is a subdivision of a state for governmental purposes, and municipal legislation, if within the scope of the power vested by the legislature, is valid, provided it be reasonable.

*Mr. John M. Thompson* (with him *Mr. Charles McCandless*), for the defendants in error:

1. A wooden building, though erected in violation of an ordinance, is not per se a nuisance. It may become such by the manner in which it is used or allowed to be used: Kneedler v. Norristown, 100 Pa. 368; Fields v. Stokley, 99 Pa. 307.

Kneedler v. Norristown is direct authority that boroughs cannot enact ordinances forbidding the erection of wooden buildings under a penalty.

2. The ordinance does not, in terms or by necessary implication, authorize the destruction or partial confiscation of the offending building: Verder v. Ellsworth (Vt.), 10 National R. 89; Sedg. St. & Const. L. 465; Miller v. Burch, 32 Tex. 208. The validity or invalidity of the ordinance is therefore immaterial.

3. Prior to the act of 1885 there was no power to adopt such an ordinance: Phillips v. Allen, 41 Pa. 481. Had the legislature enacted the ordinance, limiting its application to certain streets, its special character would have been admitted. While the legislature confessedly could not enact this ordinance, can it authorize the town council to do so? If such ordinance is valid, it must be sustained on the grounds that it can authorize its agents to do what it is by the constitution prohibited from doing itself: Hadtner v. Williamsport, 15 W. N. 138; Durach's App., 62 Pa. 491; Williamsport v. McFadden, 15 W. N. 269; Baldwin v. Philadelphia, 10 W. N. 559.

OPINION, MR. JUSTICE PAXSON:

There are seventeen assignments of error in this case. To discuss them in detail would be tedious. I can best dispose of them by indicating briefly the principles of law involved.

This was an action of trespass vi et armis quare clausum fregit, brought by the plaintiffs below against the defendants for demolishing a frame building in the course of construction in the borough of Butler. The plaintiffs were the owners or lessees of the building; the defendants were citizens of Butler, and justified under the authority of the town council of that borough.

On the seventh day of April, 1886, in pursuance and by authority of an act of assembly entitled "A further supplement to an act regulating boroughs," approved the third day of April, 1851, the burgess and town council of the borough of Butler passed an ordinance, the first section of which provides that "No person or persons shall erect or cause to be erected any frame or wooden dwelling house, shop, warehouse, store, carriage house, stable, or other frame or wooden tene-

ment, within the following limits, viz.: Main street or the intersection of Penn street, southward, to the intersection of Wayne street, and for one hundred and forty feet on either side of said Main street, from Penn to Wayne streets."

The second section prohibits the erection of frame buildings within other designated limits of said borough, without a permit from councils.

The third section provides that "any person or persons violating the provisions of this ordinance shall be compelled to remove the structure or pay the cost of removal by council, with the addition of twenty per centum, and also pay a penalty of fifty dollars for every day the same shall remain standing within the limits prescribed in this ordinance," etc.

The plaintiffs were the occupiers of a frame stable situated within the prescribed limits. It had been occupied by them for several years; was situated in the closely built up portion of the borough; was used as a livery stable, and it was alleged was a resort of disorderly persons and endangered property in the vicinity. On the morning of May 23, 1886, the building was destroyed by fire. The next morning the town council met and passed the following resolution: "Resolved, That the ordinance passed the seventh day of April, 1886, be enforced to prevent the erection of frame buildings on the square bounded on the north by a ten-foot alley; east, by a twenty-foot alley; south, by West Jefferson street, and west, by Washington street, and that the lessees and lessors of the ground included within the above boundaries be notified of this action."

A copy of the above resolution was served the same morning upon the plaintiffs. The same afternoon, in defiance of the ordinance of council and of the notice first served upon them, the plaintiffs commenced to rebuild the stable as a frame building. In the meantime, the town council assembled and passed a resolution directing the high constable to proceed at the earliest possible moment to remove the erection made by the plaintiffs. In pursuance of this direction, the high constable and the posse summoned by him for that purpose, proceeded to take down and remove the building so far as it had been rebuilt. It was for this action on the part of the borough authorities that this suit was brought. The court below held

that the ordinance was invalid, and permitted the plaintiffs to recover.

No one at this day doubts the power of the legislature to prohibit the erection of wooden buildings within the limits of a city or borough. It is a police regulation demanded in many instances by the public safety. The danger of fire is much greater in the case of wooden buildings, than in those of brick or stone. Upon this ground, and upon this alone, can this kind of legislation be justified. The inconvenience of the individual citizen in such case must give way to the public convenience and safety. Nor can it be doubted that the legislature may confer the same power upon municipal corporations, such as cities and boroughs. They are but subdivisions of the state, created by the state, for the comfort and convenience of the citizens dwelling therein. The state confers upon them a portion of its sovereignty for the purpose of enabling them to control their local affairs.

All this is plain enough. The court below, however, held that the ordinance of council was invalid, because it prohibited the erection of frame buildings in only a portion of the borough; that, under the provision of the constitution prohibiting special or local legislation, it was beyond the power of the council, as it was beyond the power of the legislature, to legislate for only a portion of the borough.

Granted the constitutional prohibition, and that under it the legislature may not pass any law "regulating the affairs of counties, townships, wards, boroughs, or school districts," it by no means follows that when the legislature by a general law confers upon a borough the power of regulating its local affairs, it may not do so by ordinances that are special in their character. The object of the constitutional provision was clearly to prevent the legislature from interfering in local affairs by means of special legislation; and, if the town councils of cities and boroughs cannot regulate them, they are in a bad way indeed. The principle contended for would prevent the town councils of a city or borough from passing an ordinance to pave one street, unless it also provided for the paving of all the other streets within the limits of the municipality. In Baldwin v. The City of Philadelphia, 99 Pa. 164, it was decided that an ordinance of the city was not a "law"

within the meaning of that clause of the constitution which declares that "no law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment." The reasoning of that case applies equally to that section of the constitution prohibiting special legislation.

Nor is the ordinance in conflict with article XIV., section 1, of the constitution of the United States, which says: "Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The ordinance confiscates no man's property. It forfeits nothing. It merely prohibits the erection of buildings of a character acknowledged to be dangerous in closely built up towns.

Moreover, if the ordinance had been general in its character, and had prohibited the erection of frame buildings in every part of the borough, it might have been open to the objection of being unreasonable and therefore void. The only reason, as before stated, why such prohibition can be sustained at all, is the danger from fire to surrounding buildings. Where such reason does not exist because of the rural character of a portion of the borough, it might be oppressive and unreasonable to apply such an ordinance.

We are of opinion that the ordinance in question was a lawful exercise of power by the town council of the borough of Butler. This brings us at once to the question, has the council the power to enforce its ordinance against persons who openly and defiantly violate it? We do not think the power of council in this respect is limited to enforcing the payment of the fine imposed by the third section of the ordinance. That would not be an adequate remedy. A man may not construct an inflammable building in the heart of the borough and defy the authorities by merely paying a fine, otherwise he could preserve such building indefinitely, to the terror of the inhabitants. The third section contains the further provision that the person violating the ordinance shall be compelled to remove the structure, or pay the cost of removal by council. The plaintiffs were warned by council not tô put up this building. They saw proper to proceed in defiance of the ordinance and the notice, to commence to reconstruct it. The high con-

stable, in obedience to the order of council proceeded to tear it down. In this there was neither confiscation nor forfeiture. It was merely the enforcement of the law against those who defied the law. We are of opinion that the act of the defendants was lawful, and that no action lies against them for this cause.

We need not discuss the case of Fields v. Stokley, 99 Pa. 306. In that case the building had been erected in violation of a similar ordinance, and was demolished by the mayor. But there was no action by city councils. The mayor proceeded upon his own responsibility. He justified upon the ground that it was a public nuisance and in this he succeeded. The jury found that it was such nuisance. Every frame building erected in a closely built up portion of a town, in violation of a lawful ordinance prohibiting it, may be said to be a nuisance, owing to the danger from fire; but it is not such a nuisance per se as would justify a private person in abating it. But, when it comes to a question of the power of council to abate it and enforce its ordinance, we have an entirely different question before us.

Of course all we have said applies only to such buildings as are erected subsequent to the passage of the ordinance. Buildings erected before are not affected by it. They are entitled to stand until such time as they come to be rebuilt by reason of decay, destruction by fire, or other cause.

What we have said covers the case fully, and renders the discussion of other points unnecessary.

　　　　　　　　　　　　　　　　　Judgment reversed.