CLARA B. SCHMIDT RUSSELL v. CITY OF FARGO, a Corporation, H. F. Emery, R. B. Blakemore, Joseph Ames, J. J. Jordan, Alex Stern, Constituting the Commissioners for the Government of the City of Fargo, and F. L. Anders, City Engineer.

(148 N. W. 610.)

**Buildings — evidence of deterioration — safety of pedestrians.**

1. Evidence reviewed, and *held:* (a) That it is not shown that the building involved in this litigation had deteriorated 50 per cent in value; (b) the evidence, showing that the condition of the building was such as to endanger the safety of pedestrians on the adjoining sidewalk, preponderates.

**Cities — fire limits — powers of cities — rule — buildings then existing — buildings subsequently erected.**

2. When fire limits are established in a city, within which buildings of certain classes may not be erected, a different rule relating to the powers of the city applies to buildings of such classes erected prior to the establishment of the fire limits than applies to those subsequently erected.

**Buildings in existence — fire limits thereafter established to include — owner has vested rights — not lost without lawful reason.**

3. The owner of a building erected within territory subsequently included within fire limits acquires a vested property right therein, of which he cannot be deprived without some lawful reason.

**Owner — holds subject to right of public to provide reasonable safeguards — cannot be sacrificed — public safety.**

4. The owner of a building holds it subject to the right of the public to pre-

---

Note.—There can be no doubt that the prevention of danger from possible fires will justify some direct confiscation of certain structures which are not nuisances. The question is one of degree, and the reasonableness which is requisite to bring within the scope of the police power regulations adopted in pursuit of the policy of ultimately discontinuing wooden buildings within fire limits must be found in contrasting the magnitude of the private loss with the increment to the public safety. As to just what degree of restriction or rate of confiscation is reasonable, the cases are not agreed, as shown by a review of the authorities in notes in 21 L.R.A.(N.S.) 454, and 51 L.R.A.(N.S.) 62.

As to what constitutes repair, reconstruction, alteration, etc., of a building within the meaning of a fire-limit statute or ordinance, see note in 26 L.R.A.(N.S.) 124; and the kindred question of remodeling, reconstructing, or augmenting building, as construction or erection within the meaning of such a statute or ordinance, is treated in a note in 26 L.R.A.(N.S.) 120.

scribe reasonable safeguards and regulations for its protection, and the interests of the individual must in such case give way to the requirements necessary for public safety, but it must be clear that the safety of the public makes action necessary, and the right of the owner in his property cannot be sacrificed on mere guesswork or surmise.

**Percentage of deterioration — not proper test — owner must make property safe.**

5. The proper test as a basis for action by the authorities in protecting pedestrians from falling walls or similar dangers is not the percentage of deterioration, but rather the ability and willingness of the owner to make the structure safe.

**Powers of city council — construction of buildings — fire limits — must be reasonable.**

6. Paragraphs 46 and 47 of § 2678, Rev. Codes 1905, which section prescribes the powers of city councils, empower such councils to prescribe the thickness, strength, and manner of constructing stone, brick, and other buildings, and to provide for the inspection of all buildings, and authorize the city council to prescribe the limits within which wooden buildings shall not be erected or placed or repaired without permission, and to direct that all or any buildings within said limits, which shall be known as the fire limits, when the same shall have been damaged by fire, decay, or otherwise to the extent of 50 per cent of the value, shall be torn down or removed, and to prescribe the manner of ascertaining such damage, . . . and by ordinance provide for issuing building permits and appointment of building inspectors; and ¶ 57 of the same section empowers the city council to declare what shall be a nuisance and abate the same, and impose fines upon persons who may create, continue, or suffer nuisances to exist. In an attempt to exercise the power thus granted, the city council of Fargo enacted ordinances prescribing the fire limits, and containing very lengthy and detailed regulations regarding the construction of buildings in said city, and especially within such limits. It makes the city engineer inspector of buildings, and requires a permit before the erection, construction, or material alteration or repair of any building in the city, and the submission of a statement regarding the dimensions, etc., together with full specifications and plans, to the building inspector, makes it unlawful for anyone to proceed to construct or materially alter any building without such permit, and makes the alteration in or addition to any building already erected, except necessary repairs not affecting the construction of the external walls, roofs, chimneys, or sidewalks, subject to the regulations of the ordinance. Section 57 of such ordinance makes it unlawful to repair any frame building within the fire limits, when it has been damaged by the elements or decay to the extent of 50 per cent exclusive of the foundation, and provides a method for determining the extent of the depreciation. A fee of from $1 to $7 is required to be paid for the issuance of a building permit, the amount of the fee depending on the cost of the building or im-

provements. *Held* that such provisions are not so unreasonable that this court can say they are invalid for the purposes for which they are intended and to which they are applicable.

**Municipal corporations — powers — removal of buildings — fire limits — construction in favor of property owners — statutes — nuisance.**

7. Statutory provisions giving municipal corporations power to prescribe fire limits and direct the removal of buildings therein should receive a strict construction in favor of the owners of such buildings, and the power to destroy valuable property, lawfully erected, is inoperative and void, unless the thing is in fact a nuisance.

**Fees for examination — statutory requirement — reasonable.**

8. The requirement that a fee be paid for the examination of plans and specifications and the issuance of a permit, ranging from $1 to $7, according to the valuation, is not unreasonable.

**Construction and repair of buildings — ordinance — compliance with — power of council to determine — police power — courts.**

9. The power conferred upon a city council and commission to determine whether proposed construction or repairs of buildings come within the provisions of the ordinance, and to abate a nuisance, is delegation of police power, and does not constitute judicial power in the sense that such power is vested by the Constitution in the courts.

Opinion filed June 6, 1914. Rehearing denied September 10, 1914.

Action to enjoin the city commission and city engineer of the city of Fargo from interfering with the rights of plaintiff to make repairs upon a building owned by her within the fire limits of the city of Fargo, and from constructing and maintaining a fence to turn pedestrians off the sidewalk adjoining such building. The defendants had judgment dismissing plaintiff's action, from which this appeal was taken. *Hon C. A. Pollock,* J.

Affirmed.

*M. A. Hildreth,* for appellant.

The ordinance which is the foundation for these proceedings on the part of the defendant is unconstitutional and void. Its provisions are arbitrary and unreasonable. Sioux Falls v. Kirby, 6 S. D. 62, 25 L.R.A. 621, 60 N. W. 156; Wadleigh v. Gilman, 12 Me. 403, 28 Am. Dec. 188; Montgomery v. Louisville & N. R. Co. 84 Ala. 129, 4 So. 626; Newton v. Belger, 143 Mass. 598, 10 N. E. 464.

The ordinance is void because conferring upon the building inspector arbitrary, unreasonable, and unjust powers. State v. Tenant, 110 N. C. 609, 15 L.R.A. 423, 28 Am. St. Rep. 715,.14 S. E. 387.

The ordinance is void because it requires the payment of a fee into the city treasury. It attempts to create a further and unwarranted tax upon appellant and her property. Dunham v. Rochester, 5 Cow. 462; 1 Dill. Mun. Corp. 423–425; 2 Dill. Mun. Corp. 4th ed. 940; St. Mary's Industrial School v. Brown, 45 Md. 310; Com. v. Stodder, 2 Cush. 562, 48 Am. Dec. 679; Mays v. Cincinnati, 1 Ohio St. 268; St. Paul v. Traeger, 25 Minn. 248, 33 Am. Rep. 462; People ex rel. Lynch v. Special Sessions Justices, 12 Hun, 65; State, Benson, Prosecutor, v. Hoboken, 33 N. J. L. 280; People v. Jarvis, 19 App. Div. 466, 46 N. Y. Supp. 596; Buffalo v. Stevenson, 145 App. Div. 117, 129 N. Y. Supp. 125; Solomon v. Hughes, 24 Kan. 211; New York v. Hexamer, 59 App. Div. 4, 69 N. Y. Supp. 198; New York v. Second Ave. R. Co. 32 N. Y. 261; Anderson v. Wellington, 40 Kan. 173, 2 L.R.A. 110, 10 Am. St. Rep. 175, 19 Pac. 719; Chicago v. Trotter, 136 Ill. 430, 26 N. E. 359; Re Frazee, 63 Mich. 396, 6 Am. St. Rep. 310, 30 N. W. 72; State ex rel. Garrabad v. Dering, 84 Wis. 585, 19 L.R.A. 858, 36 Am. St. Rep. 948, 54 N. W. 1104; Newton v. Belger, 143 Mass. 598, 10 N. E. 464; Yick Wo v. Hopkins, 118 U. S. 356, 30 L. ed. 220, 6 Sup. Ct. Rep. 1064; Noel v. People, 187 Ill. 587, 52 L.R.A. 287, 79 Am. St. Rep. 238, 58 N. E. 616.

The ordinance is void because there is no grant of such power in the charter, as a basis therefor. Keokuk v. Scroggs, 39 Iowa, 447; Pye v. Peterson, 45 Tex. 312, 23 Am. Rep. 608; Kneedler v. Norristown, 100 Pa. 368, 45 Am. Rep. 383; Champaign v. Harmon, 98 Ill. 491; Hudson v. Thorne, 7 Paige, 261, 4 L. ed. 148, note; State v. Schuchardt, 42 La. Ann. 49, 7 So. 67; Troy v. Winters, 2 Hun, 63; State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, 132 N. W. 769, Ann. Cas. 1913E, 1089; Mayville v. Rosing, 19 N. D. 98, 26 L.R.A. (N.S.) 120, 123 N. W. 393.

The city council or commission form of government cannot deprive a person of property by condemnation provided for in such ordinance. Judicial powers cannot be so vested in administrative officers. Connecticut River R. Co. v. Franklin County, 127 Mass. 50, 34 Am. Rep. 339; Holland v. Baltimore, 11 Md. 186, 69 Am. Dec. 195; Baltimore

v. Porter, 18 Md. 284, 79 Am. Dec. 686; Third Ave. R. Co. v. New York, 54 N. Y. 159; Atlanta v. Jacobs, 125 Ga. 523, 54 S. E. 534; Hewin v. Atlanta, 121 Ga. 723, 67 L.R.A. 795, 49 S. E. 765, 2 Ann. Cas. 296.

*Emerson H. Smith,* for respondent.

The real or decisive point in this case is whether or not the police power and authority is extended to the city council for the welfare and safety of the public.

Respondents contend that cities have such power and that an ordinance is valid. McGehee, Due Process of Law, 303; Fischer v. St. Louis, 194 U. S. 361, 48 L. ed. 1018, 24 Sup. Ct. Rep. 673; California Reduction Co. v. Sanitary Reduction Works, 199 U. S. 306, 50 L. ed. 204, 26 Sup. Ct. Rep. 100; Reagan v. Farmers' Loan & T. Co. 154 U. S. 362, 38 L. ed. 1014, 4 Inters. Com. Rep. 560, 14 Sup. Ct. Rep. 1047; Reetz v. Michigan, 188 U. S. 505, 47 L. ed. 563, 23 Sup. Ct. Rep. 390; Evansville v. Miller, 146 Ind. 613, 38 L.R.A. 161, 45 N. E. 1054; Brady v. Northwestern Ins. Co. 11 Mich. 446; Eichenlaub v. St. Joseph, 113 Mo. 395, 18 L.R.A. 593, 21 S. W. 8; Hine v. New Haven, 40 Conn. 478; Carthage v. Frederick, 122 N. Y. 268, 10 L.R.A. 178, 19 Am. St. Rep. 490, 25 N. E. 480.

The fact that the license fee is payable into the city treasury, provided the fee be a reasonable one, does not impress it with the character of a tax. Johnson v. Philadelphia, 60 Pa. 445; Welch v. Hotchkiss, 39 Conn. 140, 12 Am. Rep. 383; Wilson v. Eureka City, 173 U. S. 32, 43 L. ed. 603, 19 Sup. Ct. Rep. 317; California Reduction Co. v. Sanitary Reduction Works, 199 U. S. 319, 50 L. ed. 210, 26 Sup. Ct. Rep. 100; Louisville & N. R. Co. v. Kentucky, 161 U. S. 677, 40 L. ed. 849, 16 Sup. Ct. Rep. 714; Gundling v. Chicago, 176 Ill. 340, 48 L.R.A. 233, 52 N. E. 44; Bowditch v. Boston, 101 U. S. 16, 25 L. ed. 980; Camfield v. United States, 167 U. S. 524, 42 L. ed. 262, 17 Sup. Ct. Rep. 864; Brady v. Northwestern Ins. Co. 11 Mich. 446.

A municipal corporation possesses not only the powers specifically conferred upon it by its charter, but also all such powers as are necessarily incident to, or may be implied from, those powers, including all that are essential to the declared object of its existence. Carthage v. Frederick, 122 N. Y. 268, 10 L.R.A. 178, 19 Am. St. Rep. 490, 25 N. E. 480; Louisville & N. R. Co. v. Kentucky, 161 U. S. 677, 40 L.

ed. 849, 16 Sup. Ct. Rep. 714; Reetz v. Michigan, 188 U. S. 508, 47 L. ed. 566, 23 Sup. Ct. Rep. 390; Davison v. Walla Walla, 52 Wash. 453, 21 L.R.A.(N.S.) 454, 132 Am. St. Rep. 983, 100 Pac. 981.

The right to tear down a wooden building remodeled in fire limits contrary to the ordinance is police right, and *not a judicial* question. Eichenlaub v. St. Joseph, 113 Mo. 395, 18 L.R.A. 593, 21 S. W. 8; Davison v. Walla Walla, 52 Wash. 453, 21 L.R.A.(N.S.) 454, 132 Am. St. Rep. 983, 100 Pac. 981; McKibbin v. Ft. Smith, 35 Ark. 352; Klingler v. Bickel, 117 Pa. 326, 11 Atl. 555; King v. Davenport, 98 Ill. 305, 38 Am. Rep. 89; Baumgartner v. Hasty, 100 Ind. 575, 50 Am. Rep. 830; Hine v. New Haven, 40 Conn. 478.

A characteristic of the action of the police and legislative power is that it does not require the taking of private property for public use in the constitutional sense, and no compensation need be made as a condition thereto. McGehee, Due Process of Law, 303; Fischer v. St. Louis, 194 U. S. 361, 48 L. ed. 1018, 24 Sup. Ct. Rep. 673; California Reduction Co. v. Sanitary Reduction Works, 199 U. S. 306, 50 L. ed. 204, 26 Sup. Ct. Rep. 100; Reagan v. Farmers' Loan & T. Co. 154 U. S. 362, 38 L. ed. 1014, 4 Inters. Com. Rep. 560, 14 Sup. Ct. Rep. 1047; Reetz v. Michigan, 188 U. S. 505, 47 L. ed. 563, 23 Sup. Ct. Rep. 390; Evansville v. Miller, 146 Ind. 613, 38 L.R.A. 161, 45 N. E. 1054; Brady v. Northwestern Ins. Co. 11 Mich. 446.

Plaintiff, in any event, is estopped to receive the relief demanded. Gundling v. Chicago, 176 Ill. 340, 48 L.R.A. 234, 52 N. E. 44, 177 U. S. 186, 44 L. ed. 728, 20 Sup. Ct. Rep. 633.

Spalding, Ch. J. The object of this suit is to obtain a decree adjudging that the building ordinance of the city of Fargo, known as Chapter 13 of the Consolidated Ordinances, as amended in § 9 of title 2, chap. 2, and §§ 1 and 2 thereof, by an ordinance approved June 16, 1910, is null and void; that certain proceedings instituted thereunder, as relating to a building owned by the plaintiff and appellant in July, 1913, situated on lots 1 and 2 of S. G. Robert's addition to the city of Fargo according to plat No. 2, be adjudged illegal and void; and that plaintiff have a permanent injunction restraining the defendants, city of Fargo, the members of its commission, and its city engineer, from interfering in any wise with the rights of the plaintiff

with reference to such building, or interfering with her making such repairs as she may be advised are necessary with reference thereto, and for general equitable relief.

The defendant's answer alleges that the defendant Anders was the city engineer and building inspector; that, as such, and under the powers conferred by the said chapter 13, he notified plaintiff in writing of his action in stopping repairs unlawfully being made on the building described, that the defendants had not at any time under consideration the tearing down of said building, but had acted solely to protect life and property, and especially of those using the sidewalks along said building, from injury, in case the building should collapse, by building a railing on the outside of said sidewalk, in front of and on the north side of said building, leaving openings therein to accommodate the occupants and pedestrians; that this was done, believing that there was imminent danger that a collapse would occur in case the four walls should be pulled off the foundation on the north side, which they were liable to be, and in which case it was believed that the north and east walls would fall outward on the sidewalk and endanger the lives of persons passing; that said block is an old frame building, covered with brick veneer, located within the fire limits, and during all times mentioned was damaged by the elements and decay more than 50 per cent of its value above its foundation; that no building permit was or had been applied for to make repairs thereon as required by the ordinance. It is then alleged that she had submitted the matter to arbitration in accordance with the terms of the ordinance, and deposited the sum of $30 as required by said ordinance, as fee; that three appraisers were chosen, one by the city of Fargo; that the plaintiff acquiesced in the appointment of one Larson to represent her, and that the two appointed a third; that they duly qualified and made a report that the building was damaged to an extent exceeding 50 per cent of its original cost value; that, at her request, a more detailed report was made, and that thereafter she appeared in person and by attorney before the board of city commissioners, and was heard; that, having acquiesced in the appointment of the appraisers, she was estopped from denying the amount or percentage of damages found by them.

Reference was made to § 57 of the ordinance referred to, and the dismissal of plaintiff's complaint was demanded, and judgment for

costs, and the cost of establishing and maintaining the wooden railing heretofore referred to, and that she be enjoined from repairing said block, or any part thereof, or occupying the same.

A trial was had, findings of fact and conclusions of law were made, and judgment entered. It was found that the Ely block was located within the fire limits, was about 28 feet wide and 140 feet long, two stories in height, built about thirty years ago, veneered with brick, and had been damaged by the elements and decay to exceed 50 per cent of its value above its foundation, that it was liable to collapse, and was a constant and imminent menace and danger to the lives of pedestrians passing on the sidewalks in front, and particularly on the north side thereof; that the city had caused a fence to be built along the sidewalk, shutting off travel, but had never attempted to tear down, destroy, or remove said building; that the acts of defendants were in conformity with the building ordinance and in consonance with the law of the state, constitutional and valid. Judgment was for the dismissal of plaintiff's complaint. This appeal is to secure a trial *de novo.*

The building known as the Ely block, which is the subject of this controversy, faces east on Broadway in Fargo. The north side faces an avenue, and there is a sidewalk on the east end and north side. It is two stories high, a frame structure veneered with brick, the first floor used for mercantile purposes and the second floor for rooming. It was built more than thirty years ago, and long before the enactment of any ordinance prescribing fire limits or restricting the erection of wooden buildings within the city of Fargo.

The statute under which the ordinance involved in this case is claimed to be authorized is found in § 2678, Rev. Codes 1905, prescribing the powers of city councils. Paragraph 46 of that section empowers the city council to prescribe the thickness, strength, and manner of constructing stone, brick, and other buildings, and to require the construction of fire escapes therein, and to provide for the inspection of all buildings. Paragraph 47 authorizes the council to "prescribe the limits within which wooden buildings shall not be erected or placed, or repaired without permission, and to direct that all and any buildings within said limits, which shall be known as the fire limits, when the same shall have been damaged by fire, decay, or otherwise, to the extent of 50 per cent of the value, shall be torn down or removed, and to pre-

scribe the manner of ascertaining such damage, and to provide for the removal of any structure or building erected contrary to such prescription, and to declare each day's continuance of such structure or building a separate offense, and prescribe penalties therefor; and define fireproof material, and by ordinance provide for issuing building permits and appointment of building inspectors." Paragraph 57 empowers the council to "declare what shall be a nuisance and abate the same and impose fines upon persons who may create, continue or suffer nuisances to exist." In an attempt to comply with the power granted by these provisions, the city council of Fargo enacted the ordinances referred to in the complaint. The main building ordinance is of great length, and goes into particulars as to the construction of buildings in the city, and especially within the fire limits. The Ely block is within such limits.

It provides that before the erection, construction, or material alteration or repair of any building in the city, there shall be filed with the inspector of buildings a statement in writing giving the intended location, dimensions, materials, manner of construction, and estimated cost, and, if within fire limits, in addition to the above statement, there must be submitted for examination full specifications and plans of the proposed building or alterations, and for the issuance of a permit, and it is made unlawful for anyone to proceed to construct or materially alter any building within the city without such permit. It also provides that any alteration in or addition to any building already erected, except necessary repairs not affecting the construction of the external or party walls, roofs, chimneys, or sidewalks, shall to that extent be subject to the regulations of the ordinance.

The particular feature of the ordinance in question in the case at bar is § 57, which provides that "it shall be unlawful to repair any frame building within the fire limits of the city, when such building shall have been damaged by the elements or decay to the extent of 50 per cent of such building exclusive of the foundation thereof;" that "the decision of the inspector of buildings shall be conclusive as to the amount of damage to any building caused by the elements or decay, unless within twenty-four hours after his decision the owner files a petition asking for the appointment of arbitrators to determine the question of damages." It is provided that the arbitrators shall consist of three disinterested, competent persons, one to be chosen by the inspector, one by the owner,

and a third by the two thus chosen; that they shall make a true and just report of the amount and extent of such damage, and that the decision of the majority of such arbitrators, filed with the inspector within ten days from the time they qualify, shall be final and conclusive; that the party asking for arbitrators shall pay $30 to the city auditor. This ordinance, as amended in 1910, makes the city engineer *ex-officio* inspector of buildings, and prohibits the construction or erection within the city of any building without a permit first obtained from the inspector. Fees are prescribed for the issuance of such permits, of $1 for buildings costing $500 or less, and graduated up to the sum of $7 for buildings costing more than $10,000, and all persons are prohibited from continuing any building operations after the inspector has directed the suspension thereof, with a like provision as to materially altering any building without a permit.

In the case at bar, repairs were started on the interior and top floor of the building. The nature and extent of such repairs is not shown. One Larson entered complaint to the building inspector that repairs were being made without a permit, and that the building was in an unsafe condition, whereupon the inspector ordered all work discontinued, and arbitration was had. The arbitrators were named Hancock, Jenson, and the same Larson who made the complaint. They reported that the building had deteriorated more than 50 per cent in value.

The first specification on which a reversal is claimed is that the evidence was wholly insufficient to show that the building had been damaged to the extent of 50 per cent of its value, but showed the contrary. On this question a review of the evidence discloses that the owner testified that the building, exclusive of the land, was worth $12,000. She was not interrogated as to its value above the foundation. One O'Shea, an architect of Fargo, testified that he had been acquainted with the building for nearly twenty years; that he had made a personal inspection for the purpose of determining how necessary repairs would compare with the value of the building; that it was worth from $7,000 to $10,000 as it stood; that there was not a deterioration of 50 per cent of its value; that there was nothing dangerous about the building except in two places, which were on the south side and away from any street; that the cost of making the building structurally safe would be $1,037; that it was out of plumb, leaning south; that it had been in that con-

dition for twenty years; that there was absolutely no danger of the building coming down. He testified that it would cost not to exceed $70 to put in a cross-brick wall from the basement to the second floor, and lock that to the joists; that he would tie it to a building adjoining it and extending about half the length of this building and owned by the plaintiff, at a cost of $84; that he proposed to take out about 70 or 80 lineal feet of the south wall and replace it with a new wall, which would cost $368, and certain repairs on the veneering on the south side would cost $210; that the taking out of certain piers and rebuilding them to make them plumb would cost $75; odds and ends $200. The repair of certain joists which were rotted off near one end was also recommended. He testified that the repair of the whole building, puting it in good condition, would cost about $2,500; that of the $1,037 necessary to make it structurally safe, he would put about $400 above the foundation, but that of the $2,500 mentioned as repairing the whole block, about $1,600 would go in above the first floor, and that the proportion of the repairs to the value of the building would be as 16 to 80. He testified that there was positively no danger of the building's falling upon pedestrians on the north side; that it was practically in the same condition as to its walls as it was eighteen or twenty years ago.

Frank L. Anders, the building inspector, testified on cross-examination by the plaintiff, that he figured that the building had deteriorated more than 50 per cent of its value. He did not claim to be an expert upon the subject, but relied largely upon the method used by insurance companies in determining the value of buildings for insurance purposes, starting on the supposition that the life of a building is fifty years; he testified that probably it would cost $12,000 to $14,000 to build the building new above the ground; that the value of the building as it stood was two fifths of its original value, based upon a useful life of fifty years. Testifying on behalf of the defendants, Anders said that no plans and specifications for repairs were presented to him until after proceedings had been had; that his sole purpose in prohibiting repairs was to protect the lives of the people who were passing along on the sidewalk, because he was satisfied that it was dangerous to pedestrians; that he was largely guided in his estimates by scientific figures adopted and used by engineers; that he was also guided by his personal obser-

vations; that the floors of the second floor were not worth anything, but those on the first floor were in much better condition; that he also made figures based on his observation of the condition of the building, and estimated the deterioration would exceed 50 per cent of its actual value above the foundation, and, being inside the fire limits, nothing could save it except reconstruction or practically a new building from the basement up.

George Hancock, a witness for the city and an architect for many years, testified that he went into the building the day that he testified, but that he did not arrive at any conclusion as to the deterioration of the building above the foundation; that it was stupid and silly to talk about the deterioration above the foundation. In answer to a question as to the value of the property, he testified that he made an examination three or four months previously, and then estimated that there was a scrap value of possibly $500. Motion was made to strike out this evidence as incompetent, immaterial, and irrelevant, no foundation laid, and as an improper basis upon which to compute the value under the terms of the ordinance. The trial court under the statute was required to receive all the evidence offered, hence did not rule on this question. It is evident that the scrap value had little, if any, bearing on the issues. He was asked what, in view of the whole structure as now located, inside and out, the percentage of deterioration above the foundation was. Objection was made to this on the ground that he had previously testified that the entire difficulty with the building was in the foundation, and that his information was without any basis on which to predicate it. This objection was well taken. His answer was that the building was damaged over 75 per cent of its original value; that the second story was damaged by reason of the foundation's giving way and getting out of plumb; that it could not be repaired and made plumb without taking the building down. Motion was made to strike out his answer as incompetent and as without proper foundation. It was clearly incompetent. He then testified that he would be willing to take a contract to build a similar building new for $10,500.

J. H. Bowers testified for plaintiff that he had been engaged in the city as a contractor for about thirty-three years; that he was familiar with the Ely block and saw it built; that he had seen the building every day; that it was not damaged to the extent of 50 per cent; that he

went into the building and looked it over; that it could be straightened and fixed up for much less than 50 per cent of its value; that he would guess from his observation that it would cost $16,000 or $17,000 to put up a new building like it or under the same system of building; that he did not pretend his estimate was accurate.

Thomas Powers testified that he had been in business as a builder about thirty-two years and as a contractor about fourteen years; that he was familiar with the Ely block from the outside; that he did not testify that he had inspected it, but that he had seen it; that the veneering was dangerous, all ready to fall in some places; that the salvage would be worth probably $500; that he was in the upstairs once and in the downstairs twice; that the building was much out of plumb; that he would not be surprised to see most any part of the veneering fall off any time; that he thought the building would cost a little less than $10,000 new.

It is evident that superficially the evidence is in conflict as to the percentage of deterioration of the building above the foundation. Mr. Hancock practically refused to testify as to what the percentage of deterioration was above the foundation, as he said the foundation was the basis of the building and of the deterioration. O'Shea was the only person testifying who had made anything which approached a careful examination and estimate of the building, aside from the city engineer. The estimate of the latter was based largely upon the method pursued by insurance companies in fixing the amount of insurance a building should carry. It is, however, a subject of general knowledge that insurance companies, in making such estimates, allow a considerable margin, and we are therefore of the opinion that, standing alone, that does not form a basis for determining the deterioration sufficiently accurate to form a proper foundation on which to adjudicate that a building shall be torn down, especially when the margin on such basis is only about 5 per cent according to the witness. This structure was erected in conformity with the law as it then stood. The fire limits were established many years afterward. The owner had acquired a vested property right, of which she could not be deprived without some lawful reason. Buffalo v. Chadeayne, 134 N. Y. 163, 31 N. E. 443; Allison v. Richmond, 51 Mo. App. 133. It must be clear that the safety of the public, either by protection from fire or from injury by

falling walls, makes it necessary. Every owner of property holds it subject to the right of the public to prescribe reasonable safeguards and regulations for the public protection; and the interests of the individual must give way to the public safety (Klingler 1. Bickel, 117 Pa. 326, 11 Atl. 555; L'Hote v. New Orleans, 177 U. S. 587, 44 L. ed. 899, 20 Sup. Ct. Rep. 788), but the right in private property cannot be taken away on mere guesswork or surmise. To permit this would unsettle nearly every property right in existence.

Summing it all up, we think the evidence largely preponderates in favor of the plaintiff, to the effect that the deterioration above the foundation was less than 50 per cent. We say this by reason of the detailed estimate made by the architect, O'Shea, who was the only witness who had given any considerable time or attention to detailed estimates, and his specific testimony on the subject must outweigh the at least superficial estimates of others. It must be remembered also that a very different rule applies to buildings erected before the enactment of the ordinance fixing the fire limits, from that applicable to those erected subsequent to the passage of such ordinance.

Statutory provisions giving municipal corporations power to prescribe fire limits and direct the removal of buildings therein, which may be damaged to a certain extent, should receive a strict construction in favor of the owners of such buildings. Louisville v. Webster, 108 Ill. 414; McEwan v. Gilker, 38 Ind. 235; Hooper v. Emery, 14 Me. 375; Robb v. Indianapolis, 38 Ind. 51; Frank v. Atlanta, 72 Ga. 428; Wood, Nuisances, § 738. When the law gives city officials the power to remove a building erected within the fire limits in violation of the statute or ordinance, the power to compel the removal of the building grows solely from the fact that its erection was in violation of the ordinance, and not because it is a nuisance; and the power to abate nuisances does not warrant destruction of valuable property, which was lawfully erected, or anything which was erected by lawful authority; and the power to do so, when given by the legislature, is held to be inoperative and void, unless the thing is in fact a nuisance, or was created or erected after the passage of the ordinance, and in defiance of it. This is the distinction between the rights of the city regarding buildings erected before the fire limits were established and those subsequently built. Wood, Nuisances, 823; First Nat. Bank v. Sarlls, 129

Ind. 201, 13 L.R.A. 481, 28 Am. St. Rep. 185, 28 N. E. 434. We construe ¶ 47 of § 2678, Rev. Codes 1905, and the portion of the city ordinance under which the authorities were attempting to act, as having been enacted solely with reference to protection from fire, and as not necessarily furnishing a proper basis for protecting the public against personal injury by reason of the danger of brick walls or other portions of a superstructure falling.

The proper test as a basis for the action of the authorities in protecting pedestrians from falling walls or similar dangers consists not in the percentage of deterioration, but rather whether the structure can be made safe, and whether the owner will make it safe. So long as it is in an unsafe condition, and of this the officials must in the first instance be the judges, endangering the lives of pedestrians, the city may act in such reasonable manner as shall protect the public from injury.

The constitutionality of this 50 per cent test ordinance is questioned, but we are satisfied that, for the purpose for which it was intended, it is a valid enactment. The authorities indicate that there must be some method of determining whether changes made in an old structure are sufficient to constitute a rebuilding or the erection of a new structure, and such provisions are based on the supposition that there is a point somewhere between a perfect or safe building and one which cannot be made safe as to fire, etc., without complete demolition, and a rebuilding. Both the legislature and the city council have fixed that point at 50 per cent deterioration above the foundation, evidently taking the view that, where it has deteriorated more than half in value, that is, has so deteriorated that, on a reconstruction, the building will be more new than old, it is the erection of a new building, rather than the repairing of an old one (First Nat. Bank v. Sarlls, supra), but an arbitrary prohibition is invalid. We cannot pronounce this an unreasonable test.

But the officials of the city of Fargo protest that they were not proceeding with a view to protecting other property from danger from fire, but solely with a view of protecting the lives of pedestrians, especially those using the sidewalk on the north side of this building. With this end in view, they erected a fence on the outside of the sidewalk to warn pedestrians of the danger, and to turn them into the street. Under ¶ 57 of the section referred to, defining the powers of city councils, they are

authorized to declare what shall be a nuisance and abate the same. Under this and the other laws relating to the abating of nuisances and the protection of the public, appropriate proceedings may be instituted with that end in view, and we are satisfied that summary action, may be taken, as was in effect done in the case at bar. It cannot be that, when officials observe the dangerous condition of a structure, they should be compelled to allow the lives of the public to be imperiled until the commencement and determination of appropriate proceedings in court, possibly rendering the city in the meantime liable for injuries which might have been prevented by summary action. Eichenlaub v. St. Joseph, 113 Mo. 395, 18 L.R.A. 590, 21 S. W. 8; Hine v. New Haven, 40 Conn. 478. Of course, when they are protected by the judgment of a court, their liability is not the same as when they proceed on their own judgment and responsibility. In the latter case, it appears that they do so at their own risk of being able to prove the fact of peril to the public. In the case at bar, we think the evidence preponderates in favor of the attitude of the city, that there was danger to occupants of the sidewalk, and that therefore the officials were justified, regardless of the percentage of deterioration of the building, either above or below the foundation, in taking the steps which they did take to protect the public.

The same reasons, however, do not apply to their order discontinuing repairs. If the repairs were to affect the construction of the external or party walls, roofs, chimneys, or stairways, they were subject to the provisions of the ordinance relating to permits and the furnishing of plans and specifications. We are unable to determine from the record the nature of the repairs, hence we cannot say whether they were subject to the regulations of the ordinance or not. We refer to the provisions of § 3 of the building ordinance, one paragraph of which reads: "Any alteration or addition to any building already erected, or hereafter to be erected, except necessary repairs not affecting the construction of the external or party walls, roofs, chimneys, or stairways, shall to the extent of such work be subject to the regulations of this ordinance." What we have said renders it unnecessary to determine several questions which are raised in appellant's brief. However, we shall refer to some which may, to a limited extent, be involved.

The third proposition is that the ordinance is void, because it requires

the payment of a fee into the city treasury. We have heretofore indicated the amount of such fees as depending upon the cost of the structure, the highest being $7 for buildings over $10,000 in cost. This is not an unreasonable fee. The city may in proper cases require the payment of such a fee as shall reasonably compensate it or its officials for services performed. The authorities sustain this. Johnson v. Grand Forks County, 16 N. D. 363, 125 Am. St. Rep. 662, 113 N. W. 1071, is a case directly in point. In the cases contemplated by the ordinance in question, the building inspector is required to examine the plans and specifications, or perhaps buildings to be repaired, before issuing permits; and we cannot see that fees ranging from one to seven dollars are unreasonable compensation for the labor and skill required in ascertaining whether the building or repairs are in conformity with lawful requirements.

We are not called upon to pass upon all the provisions of the ordinance. They are very numerous, and few of them have any bearing on the questions before the court. It is argued that it is void because there is no grant of power in the municipal charter as a basis for the ordinance. We only need refer to ¶ 47 of § 2678, supra, to find the power granted by the legislature to the city to prescribe fire limits and regulations as to the extent of repairs which may be made within such limits, and authority for fixing the limit at 50 per cent of the value, and for issuing building permits and the appointment of building inspectors. Inasmuch as counsel does not point out the specific lack of power which he claims, we need not specify more definitely.

It is said that it is already condemned in the decision of this court in Mayville v. Rosing, 19 N. D. 98, 26 L.R.A.(N.S.) 120, 123 N. W. 393. We do not so construe it. Both the ordinance and question involved in that action were very different from those here attacked.

It is next argued that the council or commission of the city is by this ordinance vested with judicial power. We do not construe it as authorizing the exercise of judicial power in excess of that permitted in the case of many administrative or executive officers. The law specifies the facts which, when found to exist, are to control the action of the officials. It leaves very little room for the exercise of judgment or discretion on their part when the facts are once found. This does not constitute the exercise of judicial power in the sense that it is vested by the

Constitution and our form of government in the courts. There is a sense in which nearly all administrative officials exercise judicial power, and in so far as the portion of the ordinance which seems to be attacked attempts to delegate such power to the council or building inspector, we think it comes within the legal requirements, unless it be the attempt to make the decisions of the arbitrators final, and this need not be determined.

The ordinance requires impartial arbitrators; these plaintiff did not have, and she was apparently ignorant of the fact that Larson, who in some manner not disclosed became an arbitrator, entered the complaint against her.

In view of the insufficiency of the evidence as to the nature of the repairs being made, we cannot say that the city was not justified in ordering them discontinued; and the evidence being adequate to show danger to pedestrians, the judgment dismissing appellant's action is affirmed.