PENNSYLVANIA RAILROAD COMPANY, lessee, &c.,

*v*.

JOHN B. KELLEY et al.

[Submitted February 14th, 1910.    Decided February 15th, 1910.]

1. A mandatory injunction is rarely granted before final hearing or before the parties have had full opportunity to present the facts, and is strictly confined to cases where the remedy at law is plainly inadequate, and a preliminary mandatory injunction will be ordered only in cases of extreme necessity.

2. Where a brick building is maintained adjacent to a railroad, so constructively defective that it is likely to collapse at any time from the vibrations caused by passing trains and fall upon or in front of a train, seriously endangering the safety of the traveling public and the railroad company's property, and rendering it impossible for the railroad to be operated with safety to the public, a condition of extreme necessity exists, warranting a preliminary mandatory injunction compelling the immediate removal or repair of the building by the owner.

3. A building which, because of its inherent weakness or dilapidated condition, is liable to fall into a highway and injure persons rightfully there, is a public nuisance.

4. Such building is also a private nuisance where it is liable to fall and injure adjacent property.

Application for a preliminary mandatory injunction.    Heard on bill and affidavits annexed, and affidavits in reply.

The bill is filed to compel defendant to tear down a certain building which is adjacent to the railway of complainant company.    The bill alleges that the building is in such condition that the lives of people who travel over complainant's railway are imperiled by the probability that the building will collapse and fall in front of or on a passing railway train.

A hearing has been had on the bill and annexed affidavits and affidavits filed in behalf of defendant Kelley at the return of an order to show cause why a mandatory injunction *in limine*

should not be issued restraining defendant from longer maintaining the building in its present dangerous condition.

The bill avers that the line of railway adjacent to the building is being operated by complainant as a common carrier of passengers and freight; that the right of way of complainant was acquired in the year 1831 from one Snowden, who, at that time, also owned the adjacent land on which the building now complained of stands—the building having been erected by a vendee of Snowden in the year 1837, after the railway was constructed and in operation; that the line of railway of complainant at the point opposite the building complained of is depressed twenty-two feet seven inches below the level of the adjacent land, and the adjacent land is laterally supported by buttressed stone walls constructed by the company for that purpose; that the building of which complaint is now made is distant twenty-three feet two inches from the gauge line of the railroad track; that the building is a three-story brick building with an attic, and so located that the side wall of the building extends in a line parallel with the tracks of the railway a distance of sixty-two feet, including a brick shed annex; that the main building is forty-seven feet above the level of the ground, and the brick shed annex thereto is twenty-three feet in height. These several averments of the bill are not denied. The bill further avers that the building is so structurally defective that it is likely to collapse at any time and will fall on the tracks of the railway. The condition of the building is set forth in the bill in specific detail. It is averred that the foundations of the building were improperly constructed and have sunk and given way under the weight of the building; that large cracks exist in the brick wall of the building next to the railway which extend the entire distance between the windows of the second and third stories; that in the rear of the east wall a large crack extends two-thirds the height of the building; that a long diagonal crack extends across the front of the building between the window frames of the second and third stories; that these cracks show in places a separation of bricks and mortar along the lines of joints, sometimes perpendicularly and sometimes horizontally, and in other places the cracks show that the bricks have broken; that the cracks vary from mere

separation of bricks and mortar to crevices of at least three inches in width; that the rear third-story window on the side of the building overlooking the railway tracks protrudes five or six inches from perpendicular, and is so weakened by a large crack between it and the second-story window below it, that the upper corner of the building is likely to drop at any time; that the whole side of the building overlooking the railway is so much out of the plumb as to overhang the foundation wall and so weakened by cracks as to be in danger of falling at any moment, and that the condition of the building grows noticeably worse from week to week. The bill also sets forth that in the year 1889 the building became so unsafe that the common council of the city of Bordentown, on the report of the building inspector of that city, declared the building unsafe and required it to be strengthened, but the city now refuses to take any present action in the matter; that complainant now employs a watchman to guard the railway track opposite the building by day and another watchman by night, to warn approaching trains in the event of the collapse of the building. These several averments of the bill are fully verified by affidavits annexed thereto, and the affidavits of the engineers touching the structural weakness of the building and its danger of collapse disclose that the engineers have adequately acquainted themselves with the facts concerning which they have testified and are well qualified to testify touching the matters stated by them.

Defendant Kelley has filed and read two affidavits in defence of the claim of complainant. In these affidavits no denial is made of any of the averments of the bill and its accompanying affidavits, except by a general statement in one of the affidavits that "the danger of collapse is not imminent." This affidavit is made by Charles H. Fennimore. After stating that he is engaged in business in Bordentown as a contractor and builder and is "well acquainted" with the building in question, he says:

"While the property is in need of some repair, yet it is not in such condition that it cannot be repaired; that while the building might collapse if not repaired yet the danger of collapse is not imminent. That the danger to the building is caused to a great extent and continues to be caused by the increase in large traffic due to the growing and con-

tinually increasing business of the railroad company. * * * The trains cause the building to shake and vibrate, thereby causing the damage to the building."

The other affidavit is made by Joseph M. Higgins, who is also a contractor and builder of Bordentown. He states:

"That he is well acquainted with the property known as the Cain property; he knows the three-story brick building thereon erected can be repaired so that it would be perfectly safe and would be strong and lasting for many years. That the building at the present time is cracked in some places and that the condition of the building at the present time is due to the shaking and vibration caused by the trains of the railroad company which runs by it through the cut directly adjoining the said building on the south; that the traffic on the railroad has increased greatly in the last thirty years both in amount and weight and continues to increase from time to time."

The other defendant is mortgagee of the property. She has made no opposition to the relief sought.

*Messrs. Gaskill & Gaskill,* for the complainant.

*Mr. John H. Hutchinson,* for the defendants.

LEAMING, V. C.

The accepted rule in this state touching mandatory injunctions, as stated by our court of errors and appeals in *Bailey* v. *Schnitzius, 45 N. J. Eq. (18 Stew.) 178, 184,* is that a mandatory injunction "is rarely granted before final hearing or before the parties have had full opportunity to present all the facts in such manner as will enable the court to see and judge what the truth may be. It is always granted cautiously, and is strictly confined to cases where the remedy at law is plainly inadequate. A preliminary mandatory injunction will be ordered only in cases of extreme necessity." Substantially the same rule touching preliminary mandatory injunctions is stated by Chancellor Runyon in *Whitecar* v. *Michenor, 37 N. J. Eq. (10 Stew.) 6, 14,* and quoted, with approval, in *Hodge* v. *Giese, 43 N. J. Eq. (16 Stew.) 342, 351,* as follows: "The court is always very reluctant to grant a mandatory injunction on an interlocutory ap-

plication, but where extreme or very serious damage would ensue from withholding it, as in cases of interference with easements, or other cases demanding immediate relief, it will be granted."

In the present case there is not in my mind the slightest doubt touching the truth of the averments of the bill to the effect that the safety of the traveling public is seriously endangered by the maintenance of the building in its present condition. The affidavits filed in behalf of defendant, when considered as affidavits intended to meet the averments of the bill, may be said to practically admit the danger. One of the affidavits, without denying the existence of a present danger, simply says that the building can be made perfectly safe by repairs. The other affidavit, without denying the existence of the detailed structural weakness of the building, as pointed out by the bill and its accompanying affidavits, says: "That while the building might collapse if not repaired, yet the danger of collapse is not imminent," and then proceeds to point out that the present weak condition of the building is due to the shaking of the building by the traffic over the railway, and that this traffic is constantly increasing. It may therefore be said that there is no substantial denial of the truth of any of the averments of the bill except the single averment to the effect that the building cannot be made safe by repairs.

It is a matter of little concern at this time at whose ultimate expense this threatening danger shall be removed. Complainant company is compelled to operate its road and to supply to the public safe means of transportation. The maintenance of this building by defendant Kelley in its present condition undoubtedly renders it impossible for the railroad to be operated with safety to the public. The precaution of maintaining watchmen at the point of danger is wholly inadequate for the collapse of the building is most likely to occur at the moment a train is in the act of passing, and thereby causing the very vibrations which are said to have created the structural weakness of the building. The primary consideration at this time is the safety of the public, and that safety must be secured at once. That safety can be secured at once in but one way—the immediate removal of the source of danger. Whether the danger is removed

by adequate repairs to the building or by the building being wholly torn down is at this time immaterial, but the danger must be removed at once. The conditions presented are clearly those of extreme necessity. As owner of the dangerous building, the primary duty of the removal of the danger falls on defendant Kelley. His refusal to remove the danger calls for the exercise by this court of its undoubted power to compel him to do so. It is well recognized that a building which, by reason of its inherent weakness or its dilapidated condition, is liable to fall into a highway and injure passers-by or persons lawfully thereon, is a public nuisance. *Joyce Nui.* § *238.* Such a building is also a private nuisance where it is liable to fall and injure adjoining property. *Timlin* v. *Standard Oil Co., 54 Hun (N. Y.) 44.* Complainant is equally entitled to relief against the maintenance of the structure here in question whether it be viewed as a private nuisance or as a public nuisance from which complainant suffers private, direct and special injury.

As the material facts are not in substantial dispute and the operation of complainant's railway cannot be continued with safety to the public or with safety to complainant's property without the immediate removal of the danger which is threatened by the continued maintenance of defendant's building in its present condition, I will advise an order for the issuance of a mandatory injunction directing defendant immediately to remove the building or immediately to repair the building in such manner that all danger of its falling on the tracks of complainant's railway may be removed. Should defendant assume to remove the danger by repairing the building, the adequacy of the repairs so made may be appropriately inquired into at any time.

Under the circumstances presented, I think it appropriate to require complainant, before the writ issues, to execute a bond to defendants, in an amount to be ascertained at the time the order for the writ is signed, conditioned to pay to defendants such damages as may be sustained by them by reason of the issuance of the writ, in the event of its being ascertained at final hearing, or on appeal in the event of an appeal, that complainant was not entitled to the relief at this time awarded.