BILLINGS HOTEL CO. *et al.* v. CITY OF ENID *et al.*

No. 7816.   Opinion Filed January 11, 1916.

(154 Pac. 557.)

MUNICIPAL CORPORATIONS—Nuisance—Charter Powers—Abatement of Nuisance—Injunction. A municipal corporation, in the exercise of a power granted in the charter " * * * to define what shall be a nuisance in the city, * * * and to abate such nuisance by summary proceedings and to punish the authors by penalties, fines and imprisonment," may not invoke the aid of a court of equity to abate a nuisance consisting of a rooming house where intoxicating liquors are sold contrary to section 13, c. 70, Sess. Laws 1911, and the city charter, and defined by both to be a nuisance.

(Syllabus by the Court.)

Original proceedings for writ of prohibition by the Billings Hotel Company and others against the City of Enid and others. Writ issued.

*John F. Curran* and *Hills & Manatt,* for plaintiffs.

*Harry O. Glasser,* for defendants.

TURNER, J. This is an original proceeding for a writ of prohibition. The record discloses that on October 22, 1915, the city of Enid, a municipal corporation, as plaintiff, and on the relation of its city attorney, filed in the district court of Garfield county a petition alleging that the Billings Hotel Company, Walter Billings, manager, and seven others, petitioners here, were maintaining a place within the corporate limits of the city, and were there selling intoxicating liquors contrary to law, that the place was known as the Billings Hotel, but, in fact, was a mere rooming house, that the same was a nuisance as defined by an ordinance of the city, and prayed for a temporary injunction restraining petitioners from operating the same, and that the sheriff of Garfield county take possession and lock it up. All of which the court did, without bond or notice to petitioners, on October 10, 1915, and in said order set November 10, 1915, at Cherokee, as the time and place when and where said temporary injunction would come on for final hearing. On November 4, 1915, came petitioners and moved the court to dissolve the temporary injunction, for certain reasons stated in the motion, and when the court in chambers heard the same and refused so to do, and overruled the motion, this proceeding was commenced.

Assuming the things were done as charged in the city's petition, and that the place where done was a public

nuisance within the contemplation of section 13, c. 70, Sess. Laws 1911, yet, as the act further provides:

"The Attorney General, county attorney, or any officer charged with the enforcement of any of the provisions of this act, of the county where such nuisance exists, or is kept, or is maintained, may maintain an action in the name of the state to abate and perpetually enjoin the same"

—it is contended that the court was without jurisdiction to entertain the city's suit, for the reason that the same was not brought in the name of the state on relation of the Attorney General, as required by the act, but was brought by the city on relation of its city attorney. On the other hand, the city attorney disclaims any intention of proceeding under said act. Instead, he says the city relies on its right to maintain the action, "as a body politic, under the authority conferred by law upon the municipal corporation through the charter granted to the city of Enid by the State of Oklahoma." Quoting his entire contention, it is:

"That the city of Enid has the power under the authority delegated to the city by the state to proceed in equity, by way of injunction, to abate a public nuisance. It will be contended that this authority is to be found in the city charter, wherein authority is delegated to the city, by section 28, of article 3 of the Enid city charter, 'to define what shall be nuisances in the city, and within three thousand feet of the corporation lines, outside of the city limits, and to abate such nuisances by summary proceedings and to punish the authors thereof by penalties, fines and imprisonment,' together with the further grant of power in section 3 of article 3 of said charter 'to prohibit dramshops, drinking saloons, and other places where intoxicating liquors are sold.'

"That, pursuant to this authority, the city of Enid has, by section 4 of Ordinance 677, art. 84, re-enacted a transcript of the state law relative to nuisances resulting from the wrongful acts of any person who may engage in the manufacture, sale, barter, giving away, or otherwise furnishing of intoxicating liquors contrary to law in a given place. There is no method provided in the city ordinance for the summary abatement of any such nuisances existing within the city of Enid, and neither is there any state law authorizing the summary abatement of this class of nuisances by any state officer. By the laws of Oklahoma (section 4257, Harris-Day Code) the remedies against a public nuisance are: (1) Indictment or information; (2) a civil action; (3) abatement. And by section 4260, Harris-Day Code, a public nuisance may be abated by any public body or officer authorized thereto by law. Therefore it must appear that the city of Enid, being a body politic, and having the authority conferred upon it by the State of Oklahoma, through its charter, to abate, by summary proceedings, any nuisance within the city of Enid, would have the right to appeal to the courts of equity in its corporate name to abate, by injunction, a summary proceeding, any nuisance wholly within the city and particularly offensive to the citizens thereof, and this authority seems clear without any discussion of any state laws relative to the liquor question."

In other words, if we catch the point, it is the contention of the city attorney that the city, pursuant to section 28, art. 3, of its charter, by section 4 of Ordinance 677, re-enacted the state law defining a nuisance as contained in section 13, *supra,* that the place in question falls within its terms, and that, having so declared it to be, the city has the right to abate it by injunction pursuant to its grant of power contained in said section 28, authorizing the city, " * * *    to define what shall be nuisances in the city,   * * *   and to abate such nuisances by

summary proceedings, and to punish the authors thereof by penalties, fines and imprisonment." Not so. A grant of power to abate a nuisance by summary proceedings confers no power on the city to proceed to abate it by injunction in a court of equity. This for the reason that a suit in equity is not a summary proceeding.

A summary proceeding is defined by Bouvier to be:

"A form of trial in which the ancient established course of legal proceedings is disregarded, especially in the matter of trial by jury, and, in the case of the heavier crimes, presentment by a grand jury. In no case can a party be tried summarily, unless when such proceedings are authorized by legislative authority, except perhaps in cases of contempts; for the common law is a stranger to such a mode of trial."

27 Am. & Eng. Enc. of Law (2d Ed.), at page 375, says:

"A common use of summary proceedings is in the enforcement of city ordinances. Both in England and the United States statutes have been enacted conferring the power upon municipal tribunals sitting within the bounds of the municipal corporation of enforcing the ordinances or by-laws of the corporation in summary proceedings. These proceedings for the punishment of offenders against the ordinances, which are made in virtue of the implied or incidental power of the corporation, or in the exercise of its legitimate police authority, for the preservation of peace, good order, safety, and health, and which relate to minor acts and matters, are not usually or properly regarded as criminal, and hence are not in contravention of the constitutional guaranty of trial by jury in criminal cases."

From all of which we learn that the city, under its charter, can abate the alleged nuisance within its borders by proceeding against its authors in its municipal courts

in a summary way, and, when convicted for a violation of its ordinance defining a nuisance, may impose on them the penalty prescribed thereby. By authorizing the city thus to proceed such grant of power excludes the idea that the city is empowered to proceed in any other manner, to wit, by a suit in equity, to restrain a nuisance as is here attempted. Besides, the grant of power contained in section 3, art. 3, of the charter "to prohibit dramshops, drinking saloons, and other places wherein other intoxicating liquors are sold, and to close variety theaters when necessary, expedient or advisable," containing, as it does, a grant of power to close variety theaters, would seem to exclude the idea of a grant of power to the city to close a nuisance such as this is alleged to be or to deal with it at all except in the manner stated. And, when we note that Rev. Laws 1910, section 4260, declares that "a public nuisance may be abated by any public body or officer authorized thereto by law," and Rev. Laws 1910, section 4881, says: "An injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance. The petition therefor shall be verified by the county attorney of the proper county, or by the Attorney General, upon information and belief, and no bond shall be required, but the county shall, in all other respects, be liable as other plaintiffs"— we are more than ever convinced that the idea that the city may maintain this suit is excluded. In *State ex rel. Haskell v. Huston*, 21 Okla. 782, 97 Pac. 982, we said:

"When one person or class of persons is named in a power of attorney, or in act of the lawmaking power, as being authorized to do a certain thing therein named, all other persons are thereby excluded from doing the same thing as effectually as if they were positively forbidden."

*City of Ottumwa v. Chinn et al.,* 75 Iowa, 405, 39 N. W. 670, was a suit in equity by the city to enjoin a public nuisance. The suit was based upon Code Iowa, section 456, which authorized cities and towns "to prevent injury or annoyance from anything dangerous, offensive, or unhealthy, and to cause any nuisance to be abated," and section 482, which authorized them to pass ordinances for carrying into effect the powers conferred by section 456 and other sections, and in that case it was held that a civil action in equity could not, under the powers granted in those sections, be maintained in the name of the city for the abatement of a nuisance; "the method contemplated by the statute being by ordinance and criminal prosecution." In the opinion it is said:

"It is insisted by appellant that section 456 of the Code confers the right to maintain this action. That section gives to cities and towns organized under the general laws of the state 'power to prevent injury or annoyance from anything dangerous, offensive or unhealthy, and to cause any nuisance to be abated.' It is claimed by appellant that this power may be exercised in any manner which the corporation may think best, and that, since it may sue and be sued, it can accomplish the purpose of the statute by means of an action in court. * * * It is a general proposition of law that municipal corporations have and can exercise only those powers granted in express words; those necessarily implied or incident to the powers expressly granted; and those essential to the purposes of the corporation. *Clark v. City of Davenport,* 14 Iowa, 500; 1 Dill. Mun. Corp. section 55; *Hangar v. City of Des Moines,* 52 Iowa, 194, 2 N. W. 1105 [35 Am. St. Rep. 266]. Section 482 of the Code authorizes cities and towns to make and publish ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers conferred by section 456 and other sections of the same

chapter.   The ordinary method of abating a public nui-
sance and punishing its author is by criminal proceedings.
*Mayor v. Canal Co.* [12 Pet. 99, 9 L. Ed. 1012], *supra.*
'Though the jurisdiction of equity in restraint of public
nuisances is well established, it will not be exercised
where the object sought can be as well attained in ord"-
nary tribunals, unless upon the application of one who
suffers a personal injury aside from the injury to the
public.'   1 High, Inj. section 761.   The petition in this
case charges a nuisance within the meaning of section
4089 of the Code.   The remainder of the chapter in
which that section appears provides for the abatement of
the nuisance and the punishment of the one who caused
it.   So far as the petition shows, the rights of the general
public may be fully protected by ordinary criminal pro-
ceedings.   The plaintiff does not appear to be especially
affected by the nuisance, but bases its demand for relief
upon the alleged fact that it is injurious to its citizens.
These, however, constitute a part of the general public.
Plaintiff is not authorized to bring an action for the
benefit of the public, and has failed to bring itself within
the provision of section 3331 of the Code.   In view of
the general provisions of the statute, relating to public
nuisances, we conclude that the abatement contemplated
by section 456 of the Code was to be effected by the direct
action of the corporation itself, as through the medium
of an ordinance, rather than by equitable proceedings
in court."

None of the cases cited by the city are in conflict
with the Iowa case and what we have said.   *Village of
Pine City v. Munch,* 42 Minn. 342, 44 N. W. 197, 6 L. R.
A. 763, cited by the city in support of its contention, was
a suit in equity brought by the village to restrain de-
fendants from draining off a pond within the village
limits in the hot months of summer, thereby converting
the overflowed land into a marshy swamp, and causing
the decayed vegetable matter on the bottom of the pond

to create sickness. The village secured the relief, and the case was affirmed by the Supreme Court of Minnesota, for the reason that the charter of the village expressly conferred the power to bring the suit. Stating the general rule, the court said:

"It is undoubted law that, except in the case of a private person sustaining an injury special in kind, a bill to restrain an existing or threatening public nuisance by injunction will only lie at the suit of the state, or of some proper officer or body, as the authorized representative of the state. It must also be conceded that a municipal corporation has no control over nuisances within its corporate limits, except such as is conferred upon it by its charter or general laws."

After which the court proceeded to draw from the charter a grant of power sufficient to maintain the suit, thus:

"But these propositions are not, in our judgment, decisive of this case. The plaintiff is a village incorporated under Special Laws 1881, c. 38. Chapter 4 of this act, which defines the general powers of the common council of the village, provides that they shall have authority, by ordinances, resolutions, or by-laws: '(25) To remove and abate any nuisance injurious to the public health'; '(27) To do all acts and make all regulations which may be necessary and expedient for the preservation of health or the suppression of disease.' And section 5 of chapter 4 of the act provides that 'the powers conferred upon the council to provide for the abatement of any nuisance shall not bar or hinder prosecutions or proceedings in court according to law'. Under these grants of power undoubtedly the common council could pass an ordinance prohibiting or abating the nuisance complained of, and provide for its enforcement by appropriate penalties. In fact, they did pass an ordinance prohibiting drawing off the water in the pond below a certain depth, which, however, the defendants have disobeyed. Is the

plaintiff, in the matter of remedies for the abatement of a nuisance in such cases, limited to the enforcement of the penalties prescribed by ordinance, or may it resort to a court of equity to restrain or abate it?"

Whereupon the court held that a resort to a court of equity was granted to the city in the charter, and affirmed the case. It is clear that, had the charter in that case failed to contain a sufficient grant of power to enable the village to bring the suit, such relief would have been denied.

Neither is *City of Huron v. Bank of Volga*, 8 S. D. 449, 66 N. W. 815, cited by the city, in conflict with what we have said, but rather in line. That was a suit by the city in a court of equity, against a private corporation, to abate a public nuisance within the confines of the city. It consisted of a large wooden structure owned by the defendant, situated conspicuously upon a public business street, and which had been partially destroyed by fire. The city prevailed, but did so in virtue of a grant of power contained in its charter. After stating the general rule to be:

"While a private person is not authorized to maintain an action unless specifically injured, a city council, being the governmental agency to whom the inhabitants of a municipality have a right to look in a proper case for protection from the evil effects of a public nuisance, may, when authorized so to do, resort to indictment, a civil action, or abatement, according to the exigencies of the particular case"

—the court went on to say:

"But, in our opinion, section 4688 of the Compiled Laws, when considered with respondent's city charter, reasonably construed, authorizes the proper authorities to apply in a case like the present to a court of equity

for aid in the enforcement of its general power 'to restrain, prohibit, and suppress nuisances at common law.' "

For how could the court hold otherwise when the grant of power to restrain implied the power to invoke the power of a court of equity so to do?

We are therefore of the opinion that, as the city's charter contains no grant of power authorizing the city to restrain a nuisance within its borders, the city may not invoke the powers of a court of equity so to do, and that the writ should run.

It is so ordered.

All the Justices concur.