**NEW HAMPSHIRE FIRE INS. CO. v. MURRAY, Mayor, et al.**

**No. 6780.**

Circuit Court of Appeals, Seventh Circuit.

June 13, 1939.

true

Emmett McCarthy, of Chicago, Ill., and Charles F. Kuchenberg, of Marinette, Wis., for appellants.

Hubert O. Wolfe and Francis J. Hart, both of Milwaukee, Wis., for appellee.

Before SPARKS, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Defendants appeal from a decree of the district court enjoining them from enforcing a resolution of the common council of the city of Marinette, Wisconsin. The resolution adopted the report of the appraisal committee that the building in question was a nuisance under the fire ordinance and directed that the building be torn down. The plaintiff, insurer of the building, brought a bill in equity in the district court to enjoin the enforcement of the abatement order on the ground that the physical condition of the building did not warrant the condemnation finding. The court decreed that the common council acted beyond the sphere of its jurisdiction and that consequently the order to abate amounted to taking property without due process of law.

The defendant Drefahl, owner of the building in question, carried $14,000 insurance against loss by fire. In this regard

the plaintiff had issued two policies to the defendant in the sum of $5,000. These policies, of course, were on the standard statutory form. Secs. 203.01, 203.06, Stats. Wis., 1937. For this reason the plaintiff had an interest in this matter which was materially affected by the abatement order. The law is clear in Wisconsin that the extent of the insurer's liability is determined not by the actual fire loss or by the amount of fire damage found by the common council. In these cases, where the building after a partial fire destruction is ordered destroyed pursuant to a fire ordinance, the insurer's liability is measured by the face value of the policy as for total fire destruction. Sec. 203.21, Stats.Wis., 1937; City of New York Fire Insurance Co. v. Chapman, 7 Cir., 76 F.2d 76. Accordingly, after the order to abate was made, Drefahl made a claim against the plaintiff for $5,000, basing his claim on Section 203.21 supra.

The insured structure was a three-story frame building which was located within the fire limits of the city. A fire occurred in the property on March 14, 1936, doing considerable damage. The fire ordinance of the city provided that wooden buildings within the fire limits, which were damaged to the extent of 50 percent or more of their value, should not be repaired but demolished upon the order of the common council. The ordinance provided further that the extent of the damage should be determined by three disinterested residents, one to be chosen by the owner of the building, another by the mayor, and the two so chosen to select the third. In addition, the ordinance stated that their finding shall be final and conclusive.

On April 16, 1936, without notice to the plaintiff, the appraisal committee was duly appointed. On one afternoon this committee inspected the damaged building and then made its report to the council to the effect that "the building is damaged to the extent of 80% of its value and should under no circumstances be rebuilt, as it presents an absolute hazard and menace to the adjoining property and to the City." The council accepted the report, which constitutes the basis of the order to abate.

Learning of the contemplated abatement through the publication of the resolution, the plaintiff requested to be heard before the council in order to demonstrate that the damage to the building did not justify its condemnation under the ordinance. Receiving no reply, the plaintiff filed its bill in equity to enjoin the enforcement of the demolition order on the ground of arbitrary, unreasonable, and confiscatory action by the council. After all the evidence had been adduced, the court granted an injunction, concluding that the appraisal report was "without foundation in fact," that the damage was considerably less than the statutory requirement of 50 percent, and that the damaged condition of the building was not dangerous to life and property. From the decree of the court this appeal was prosecuted.

It is undisputed that on the day prior to the fire the building was in good physical condition. It was then being used for combined business and residence purposes. In fact, defendants' expert witness, Sundstrom, testified that the building "gave every indication of being in very good condition and newly decorated before the fire." On this phase of the evidence, both sides fixed the value of the building as of the day prior to the fire at a figure over $10,000 and less than $11,000.

In this connection it is to be noted that the appraisal report found only one figure, namely, that the damage was 80 percent of the value. It is true, however, that the two appraisers testifying in the district court explained that they had valued the building prior to the fire at a figure over $10,000 and less than $11,000.

On the other hand, coming now to the figures on the extent of the damage, that is, the cost of replacing the building in all respects as it was before the fire, it is significant that a striking variance appears. Experts Lemke, Fromm, and Messmer (called by the plaintiff) testified that the damage was less than $4,000 and hence less than 40 percent of the value as of the day prior to the fire. As against this, the appraisal report fixed the damage at 80 percent. As was noted above, the report did not disclose the basic figures of damage and value. However, at the trial, appraisers Bentley and Rettke stated that they had set the value between $10,000 and $11,000, which means that using the reported 80 percent the damage was around $8,700.

Three other experts took the witness stand on the important question of damage. The defendants called expert Sundstrom, who placed the damage on the day he inspected the building around $5,700. It might be added that Sundstrom made his inspection nine months after the fire, which made it impossible for him to determine the

damage as of the time of the appraisal report. In fact, Sundstrom admitted that there had been weather damage subsequent to the appraisal report and prior to the time of his inspection, but that he was not in position to give separate estimates on the antecedent and subsequent damages.

·In addition, the plaintiff called one Cowdin, an insurance adjuster, who had been hired by owner Drefahl to assist him in establishing the fire loss. Cowdin testified that he had inspected the building and had estimated a loss of less than $4,000, which was approved and accepted by Drefahl. The plaintiff also called expert Klaver, who fixed the damage around $4,300 but who did not testify as to the value of the building prior to the fire.

At this time it might be well to discuss, as far as the record discloses, the activity of the appraisal committee. Hartberg was an insurance agent, Rettke a restaurant owner, and Bentley a building contractor. Rettke testified that "I never figured the cost of erecting a building. I have figured the cost of making repairs of a building in my mind. I never got into detail. When I say I have had Mr. Klaver fix the building for me, I mean I have him give me an estimate of the cost." He also said as to Hartberg, who represented the owner Drefahl but who did not testify, that "he didn't offer any objections to an eighty percent loss * * * and didn't offer any argument to the effect that he thought it was his duty to have the building preserved or kept for the owner." Bentley testified that at the inspection he had made notes (which he could not produce at the trial) and that prior to his appointment as appraiser he had been hired by Drefahl's attorney to make an estimate of the damage, which he had done.

With all these facts before it, the district court concluded that the common council (which based its directive order on the findings of the appraisal committee) had acted beyond the sphere of its jurisdiction in finding that the damaged building came within the statutory class of 50 percent and that as a consequence thereof it constituted a nuisance. The court decreed, therefore, that the abatement order was not a proper and reasonable exercise of the police power and hence deprived the parties affected thereby of property without due process of law.

■ It is contended that the court erred on the extent of damage. In particular, the argument is that the damage contemplated by the ordinance includes age, weather elements, and faulty construction as well as fire damage. It follows, therefore, so the argument goes, that since the evidence adduced by the plaintiff was confined to the fire damage that the trial court was not in position to judge that the council had acted beyond its statutory sphere of jurisdiction.

We have considered defendants' contention seriously, and we agree that the damage contemplated by the ordinance is not restricted to damage caused by the fire. However, we disagree, and the record bears us out, that the plaintiff's evidence was limited to fire damage alone. This argument, on the other hand, might very well be made against the defendants themselves. At any rate, as far as appraiser Rettke was concerned, he stated that "we (the appraisal committee) found the building to be destroyed 80 per cent of the value by fire."

It is true that appraiser Bentley placed reliance on the faulty construction element, which he stated was part of the damage caused by the fire. Yet, defendants' own expert Sundstrom testified that any faulty construction element to be considered was not caused by the fire at all. Moreover, as far as the condition of the building prior to the fire was concerned, Sundstrom testified that the building "gave every indication of being in very good condition and newly decorated." On this point, of course, Sundstrom was supported by the plaintiff's evidence. To us the record is clear, not only that the building had been maintained in good physical condition prior to the fire, but that it was not in danger of structural collapse before or after the fire.

■ Now we are ready to discuss what in our minds is the most interesting phase of the case. On this appeal the difficulty has been to determine whether we are reviewing judicial findings or administrative findings. If it is the former, the record reveals that the decree of the district court is supported by substantial evidence. If it is the latter, and counsel for the defendants so insists, the question is closer, although it is our belief that even here the administrative findings can not comply with the substantial evidence test. In saying this, we are not unmindful that the principle ordinarily applied in reviewing administrative findings is that the courts will not examine the facts further than to determine whether there was substantial evidence to sustain the administrative order.

The problem presented here, as we see it, is to determine whether the same respect should be given to the administrative finding in question (i. e., that the building came within the nuisance class as defined by the ordinance) as is bestowed on jury verdicts or judicial findings in general. In other words, boiling the problem down, it comes to this: Should the particular finding of the common council be placed on a parity with the finding of a court?

█ We are acquainted with the principles of administrative law, which have won a place in our jurisprudence, and we know that generally it may be said that administrative adjudications, consistent with procedural due process and proper statutory authorization, are accorded the same respect as judicial determinations. Our analysis in the instant case, however, leads us to conclude that the situation involved here is not worthy of the usual administrative autonomy. In brief, as we shall develop below, the administrative declaration in question is not the equivalent of an administrative adjudication.

In tracing the statutory authority for the administrative exercise of police power here in question, we find, and counsel for the defendants so admits, that the statutory source is Section 62.23 of the Wisconsin statutes. This Section authorizes the common council by ordinance to designate fire limits and to make regulations for the repair and construction of structures therein. Sec. 62.23 (7). It also authorizes the common council to establish a board of appeals, to which "any person aggrieved" may go for a hearing and review of any order based on a finding made by the administrative official charged with the enforcement of the ordinance, Sec. 62.23(8) (a, b), whereupon the board of appeals could make such disposition of the administrative order as "in its opinion ought to be made in the premises, and to that end shall have all the powers

of the officer from whom the appeal is taken," Sec. 62.23(8) (b, e).

In addition, the Section provides that the decision by the board of appeals is reviewable by certiorari in a court of competent jurisdiction, Sec. 62.23(8) (b, f), the appeal to operate as a stay of the administrative action, unless the administrative official declares that an emergency exists, Sec. 62.-23(8) (d). Moreover, the review court, in addition to the administrative record which is taken up, may take evidence "which shall constitute a part of the proceedings upon which the determination of the court shall be made." Sec. 62.23(8) (f, i).

Thus, the controlling statute authorized the common council to eliminate nuisances as described by the ordinance, and provided for a hearing by direct appeal to a superior administrative board, which was to make a decision on the merits. That is, the authorizing statute contemplated an administrative hearing on all the evidence. [1] In addition, the authorizing statute contemplated judicial review of the administrative adjudication by writ of certiorari, which of course can only apply to administrative action taken in judicial form after a hearing, or where there is at least a record upon which the writ can act.

█ As we understand the instant case, the council did not give an administrative adjudication, as contemplated by the authorizing statute. So, in a formal sense, there is no administrative record for the reviewing court. And it is clear that there was neither summary administrative action taken nor summary action declared to be necessary in the public interest. We have, in other words, an administrative order based on an ex parte determination.[2]

Under such circumstances, the contention by counsel for the defendants that the administrative finding should be placed on a parity with a jury verdict or judicial finding lacks substance. This is not to say, however, that the ex parte administrative deter-

---

[1] It is true that the statute does not prevent summary administrative action (abatement), where the common council declares an emergency to exist involving immediate public danger. This summary action was not intended however to preclude an administrative hearing subsequent to the summary action.

[2] What constitutes an administrative hearing is determined by the facts and circumstances of the situation. Thus, the nature of the administrative action, the nature of the situation acted upon,

and the legislative policy are factors to be considered.

In our case the authorizing statute contemplated a hearing on all the evidence. It is true that the question of the condition of a particular building might require a less elaborate hearing than is necessary before the Interstate Commerce Commission.

But it is also clear that the statute meant more than an inspection and finding thereon by the common council.

mination in question is unconstitutional as a violation of the due process clause. We are aware of the established rule that a hearing in the administrative stage is not a prerequisite to the validity of administrative action in the exercise of the police power. The lack of an administrative hearing, however, does and should affect the weight that is given to the administrative finding. This question alone, then, remains for discussion.

◼ Even going farther, even if we were in doubt about the logic of our position, that under the circumstances of this case the administrative findings are not conclusive, as urged by the defendants' counsel, we need but refer to the authorities. On the question as to whether a nuisance exists under the ordinance, the rule seems to be that no matter where the legislature "draws the line, an owner has a right to a hearing on the question whether his property falls within it, and this right is not destroyed by the fact that the line might have been drawn so differently as unquestionably to include that property." Justice Holmes Miller v. Horton, 152 Mass. 540, 546, 26 N.E. 100, 102, 10 L. R.A. 116, 23 Am.St.Rep. 850.

◼ That a de novo trial is the general principle applicable in these cases involving ex parte determinations of administrative bodies, see also North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S. Ct. 101, 53 L.Ed. 195, 15 Ann.Cas. 276; Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; Yates v. Milwaukee, 10 Wall. 497, 19 L.Ed. 984; Hutton v. Camden, 39 N.J.L. 122, 23 Am.Rep. 203; People ex rel. Copcutt v. Board of Health, 140 N.Y. 1, 35 N.E. 320, 23 L.R.A. 481, 37 Am.St.Rep. 522; Pearson v. Zehr, 138 Ill. 48, 29 N.E. 854, 32 Am.St.Rep. 113; Lowe v. Conroy, 120 Wis. 151, 97 N.W. 942, 66 L.R.A. 907, 102 Am.St.Rep. 983, 1 Ann.Cas. 341. Since the plaintiff was refused a hearing, it would seem that he was entitled to a hearing in the courts. Our task, in such a case, would be to review the findings of the district court, where the hearing was given.

It does not follow necessarily that, because the plaintiff was entitled to a hearing on the merits in the district court, the ex parte determination of the council should be disregarded. To what respect are the council's findings entitled? That they should carry some weight is undisputed. After all is said and done, the common council, which ordered the destruction of property, in effect was adjudicating property rights. The administrative act involved was discretionary and judicial in nature. The job of the council in this respect is not essentially different than that which a jury has to face in deciding if a nuisance exists or which a court has to meet when it orders the abatement of a nuisance.

◼ But there is one important distinction to be noted in the instant case. The jury or court makes its decision on all the evidence. The council in our case made its determination ex parte and then refused to hear evidence offered by the plaintiff. Surely, under circumstances such as these, the administrative findings are not on a par with judicial findings, and are clearly not conclusive. There is a wide margin of difference, in our opinion, between an ex parte determination and an administrative adjudication based on a hearing. We cannot believe that more than prima facie correctness should be given to such administrative findings. Other considerations bearing on our conclusion follow briefly.

◼ The legislative policy, plainly expressed in the authorizing statute, is an important consideration in determining what weight should be given the administrative findings in the instant case. The legislative policy contemplated that the plaintiff obtain a hearing on the merits. It did not contemplate an ex parte determination, especially where, as here, the question is one of reconstructing a building which when erected conformed to the law. Since the plaintiff was refused this hearing by the common council, plaintiff was entitled to, and did receive, a hearing in the district court.

The question then would be, as far as this court is concerned, a matter of applying the substantial evidence test to the court findings, being careful, however, to see that the ex parte determination of the common council was given proper weight. On the other hand, if the hearing had been given by the common council or a superior administrative body (as provided for in the statute), the extent of judicial review in the district court would properly have been an application of the substantial evidence rule to the administrative findings.

Other elements which are to be considered follow. In the instant case, the situation did not require expert knowledge, e. g., the condemnation of drugs. In such cases, the ex parte determinations of experts would demand substantial respect. Moreover, in the instant case, the situation did not require summary proceedings. In mak-

ing an ex-parte determination and then in refusing plaintiff a hearing, the common council sacrificed unnecessarily the more complete record which otherwise would have been available.

To us it follows logically, and the authorities support us, that the particular administrative findings here are not to be given more than prima facie correctness. A jury verdict, based on an ex parte presentation of the evidence, would not stand high in the eyes of the law. Common sense would dictate that an ex parte finding of an administrative body of lay men is not to stand in any higher plane. We are not prepared to say, on this record, that the district court erred in according proper weight to the common council's findings. We are prepared to say, on the other hand, that the contention made by the defendants' counsel, urging conclusiveness of the administrative findings in question, is plainly erroneous.

Therefore, since the record substantially supports the findings of the district court, the decree of that court, to the extent that it enjoins the enforcement of the abatement order of the common council here in question, is affirmed.