## THE CITY AND COUNTY OF HONOLULU, A MUNICIPAL CORPORATION, BY RALPH S. INOUYE, ITS BUILDING SUPERINTENDENT *v.* ORESTUS CAVNESS.

### No. 4216.

AUGUST 15, 1961.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY LEWIS, J.

This is an appeal by a defendant who, by decree of the trial court in an action brought by the City and County of Honolulu, hereinafter called the "City," has been required to demolish and remove his building, situate at the corner of Smith and North Pauahi Streets, Honolulu.

Specification of error No. 3 asserts that: "The trial court erred in finding that the building of appellant was a public nuisance and that it could only be abated by demolition and destruction." We first consider the attack upon the finding of a public nuisance. Upon review of the evidence, we hold that the finding is not "clearly erroneous." H.R.C.P., Rule 52(a); *Hawaii Builders Supply* v. *Kaneta,* 42 Haw. 111.

The trial court not only heard the evidence but also visited the premises, and in the oral decision preceding the entry of findings and conclusions stated that: "The view this morning was most enlightening * * *." A view of the premises often clarifies the evidence, though as held in *Von Holt* v. *Izumo Taisha Kyo Mission,* 42 Haw. 671,

it is no substitute for evidence. An appellate court can only review the cold record, and it requires more than the general attack made by defendant in this court to convince the reviewing court that a mistake has been made.

The evidence as to the condition of the building was adduced by plaintiff. The evidence adduced by defendant had to do only with the hardship that he would suffer if forced to demolish the building, and the inequity of that course.

Ronald Nakamoto, a City building inspector, testified that the building is at least forty years old. He testified as follows: Over half of the posts supporting the building are split, tilted, buckling, termite damaged, or partially buried in the ground. Many of the footing stones have settled. The footing stones are of various sizes and shapes; also hollow tile and wooden blocks have been used as a foundation base. Most of the sills above the vertical supports or posts are termite damaged, some completely deteriorated. Others are buckling. Nearly all of the joists above the sills are termite damaged or deteriorated from rot. The settling of the building evidences itself in bulging and sagging portions of the floors. Where the floor covering is such as to permit observation there is evidence of deteriorated flooring.

The walls, this witness testified, also show evidence of termite infestation, as do beams supporting the second floor. Some of the walls are buckling. Upon looking at the building from either street "you have a wavy effect noted along this building; the walls have settled in various places." Further, "the danger exists there of collapsing." And he testified:

"Well, I would say repairs would be impractical since you have to start from the foundation and go all the way up. To do necessary repairs to this building would be practically rebuilding the whole thing."

This, as he explained, is due to the over-all deteriorated condition, so that upon replacement of one board, for example, there is presented the necessity of replacing another in order to secure the first. "It keeps on going, and in this case where you have posts, sills and joists, your flooring and also your supporting beams and posts in such a state, you will have to start from the ground all the way and practically rebuild this whole building."

Jinji Higa, a registered engineer employed in the City building department as a structural engineer, on the basis of inspection gave it as his opinion "that the building is definitely structurally unsound," basing this opinion on conditions he found on the premises substantially as above described. He testified that there was a "very great" potential of collapse. He too was of the opinion that it would be impractical to repair. It "would cost much more than if you were to build a similar type of building in its entirety, being that if you were to take any piece, I'm pretty sure that you would find another piece which is bad, and this would be a progressive thing * * *."

This evidence fully supported the ultimate finding that the building is a public nuisance, as well as subsidiary findings made by the court such as:

"8. The said building is seriously and almost wholly damaged and deteriorated by termites, rot and age.

"9. The foundation, framing, walls, partitions and flooring are generally sagging, buckling, bulging and pulling apart."

"13. The building is in great danger of collapse."

"15. The building is structurally unsafe * * *."

That no witness ventured an opinion as to exactly when the building will collapse is no defense. Both at common law and under section 203 of the Building Code (Uniform Building Code, 1958 ed., adopted by Ord. No. 1704), a building that is liable to collapse and is dangerously un-

safe is a public nuisance, at least when as here the building is in a congested area adjacent to a public street. See *City of Nashville* v. *Weakley,* 170 Tenn. 278, 95 S.W. 2d 37; *Stoetzner* v. *City of Los Angeles,* 170 Cal. App. 2d 394, 338 P. 2d 971; *Russell* v. *City of Fargo,* 28 N.D. 300, 148 N.W. 610, 615; *State* v. *Ireland,* 126 N.J.L. 444, 20 A. 2d 69, *appeal dism'd* 127 N.J.L. 558, 23 A. 2d 560; *Pennsylvania R.R.* v. *Kelley,* 77 N.J. Eq. 129, 75 Atl. 758; Joyce, *Nuisances,* § 238; 39 Am. Jur., *Nuisances,* § 77; 9 Am. Jur., *Buildings,* § 40. Necessarily, the test as to what is really dangerous is somewhat indefinite but no more so than in many other areas of the law. The case is to be determined on the evidence and here there was no conflict therein.

The evidence also supported the conclusion, which the court reached, that:

"22. The defects which make the said building a public nuisance and a hazard to the public safety, health and welfare cannot be remedied except by repairs which would amount to a reconstruction of the building.

"23. Repair or closing of the said building would not be an adequate or effective remedy and the demolition of the building is necessary."

On the question whether demolition of the building is called for or repairs will suffice, the rule is that a nonconforming building cannot be perpetuated in a fire district by repairs which would amount to "a substantial reconstruction" of the building. *City of Houston* v. *Lurie,* 148 Tex. 391, 224 S.W. 2d 871, 14 A.L.R. 2d 61. This building is located in Fire District No. 1 (R.O. 1957, § 16-2.44) and there is no contention that it could be constructed today. Whether the repairs would amount to a substantial reconstruction is a question of fact, to be disposed of upon the evidence and findings.

Defendant contends that the evidence "is not specific or convincing as to the necessary extent or cost of the [structural repairs]." However, the provisions of section 104(b) et seq. of the Building Code are not involved. Those provisions of the Building Code, by various measures expressed in percentages of value, limit the additions, alterations or repairs that may be made to a nonconforming building without making the entire building conform. The scope and validity of those provisions, and the specificity of evidence necessary to apply them, are matters not before us. The evidence is that this building would have to be practically rebuilt. Applicable here is a clearly valid general principle, *i.e.*, demolition may be ordered when the work that would be required to eliminate the nuisance would amount to substantial reconstruction of a type of building that cannot be built in a fire district. That principle has not been superseded by the Building Code provisions. *City of Houston* v. *Lurie, supra; Perepletchikoff* v. *City of Los Angeles,* 174 Cal. App. 2d 697, 345 P. 2d 261. Accordingly, it was not necessary for plaintiff to show in dollars and cents that the work would exceed fifty per cent of the value of the building, or to apply any of the other measures set out in section 104 of the Building Code, or to be more specific than it was. The case is not hovering in that area; *cf., Russell* v. *City of Fargo, supra.*

The court found not only that the building is "structurally unsafe" and "in great danger of collapse," as above stated, but also that it is a fire hazard. As to the latter, there was evidence as to lack of proper exits and as to defects in the electrical system, as well as the effect of termite infestation and rot. However, those matters are not considered by us because not necessary to the conclusion reached by the trial court. For the same reason, we do not consider the evidence and findings as to defects

in the plumbing system and as to insanitary conditions.

By specification of error No. 4 defendant asserts an exemption for his building. He relies upon section 104(g) of the Building Code, which provides that an existing use or occupancy may be continued, if legal at the time of passage of the Building Code and "not dangerous to life." However, it is section 203 of the Building Code that is pertinent here. That provides that a building which is structurally unsafe is declared to be a public nuisance. When the building itself is unsafe to the point of being a public nuisance, use and occupancy do not enter into the case and need not be considered. Section 104(g) does not say that such an unsafe building may continue to be occupied merely because it was in existence when the Building Code was passed. What it does say is that an existing use and occupancy is not per se illegal because of the more exacting requirements of the Building Code as compared with the requirements in effect and pursuant to which the use and occupancy were legal at the time of passage of the Building Code. By reason of deterioration of the building it may become a public nuisance nevertheless. Such is the present case.

It also is contended that the trial court should have balanced the equities in defendant's favor, and should have denied relief for lack of a showing of irreparable injury (Specs. Nos. 5 and 6). However, this is but belaboring the question already discussed as to whether a public nuisance in fact exists. A building that is dangerously unsafe to the point of being a public nuisance cannot be protected from abatement on any theory that, from a pecuniary standpoint, the property owner has a great deal at stake and the public little that can be tangibly shown. The right of the public to protection from the danger is not based on pecuniary grounds. See 39 Am. Jur., *Nuisances*, § 155 at 425.

Defendant's further contentions are: unconstitutionality of the Building Code and ordinances (Spec. No. 1), and adequacy of the remedy at law (Spec. No. 2), it being argued that plaintiff should have summarily abated the nuisance, if any, or should have caused proceedings to be brought in a criminal court. Such contentions, as applied to this case, present the argument that under the statutes, ordinances and case law, the City cannot abate a common law nuisance by an action for a mandatory injunction.

*Crossman* v. *City of Galveston,* 112 Tex. 303, 247 S.W. 810, 26 A.L.R. 1210, is the only case cited by defendant. In that case the property owner was given injunctive relief against the summary abatement of an alleged nuisance on the ground that: "The ordinance within itself authorizes the taking of property without due process, and it must therefore fall * * *." Whether in our judgment *Crossman* was rightly decided need not be determined. The ramifications of the problem there involved are fully explored in an annotation in 14 A.L.R. 2d 73, perusal of which demonstrates the merits of sticking closely to the exact point involved here.

Under Ordinance No. 1803, approved February 12, 1960, before this suit was brought, section 203 of the Building Code, previously adopted by ordinance, was amended to provide that nothing therein should be construed to limit or restrict the building official from instituting, on behalf of the City, any legal or equitable proceedings to obtain *inter alia,* compliance with a notice to demolish a building. This was specified to be a method of proceeding "in addition to those specified herein," referring to provisions of section 203 for criminal prosecution and for summary abatement, upon order of the City Council. We hold that the latter provisions are not involved here. *City of Shenandoah* v. *Replogle,* 198 Iowa 423, 199 N.W. 418. We do not have, as in *Crossman,*

the question whether the City can force the property owner to take the initiative as to court proceedings. Here the City itself has sought judicial determination that the nuisance exists as found by the building superintendent.

At this point it is necessary to consider the complaint in more detail. The plaintiff is styled: "The City and County of Honolulu, a Municipal Corporation, by Ralph S. Inouye, its Building Superintendent." Attached to the complaint was a copy of a notice signed by the building superintendent, containing a statement of "major defects noted in the building," including:

"1. *Structural*

The foundations, framing, walls and partitions thruout the building is very badly damaged by termites, dry-rot and/or other forms of deterioration. That the building is structurally unsafe for occupancy is evidenced by the sagging, buckling and listing of the various structural elements of the building. Public safety is also jeopardized by the sagging remains of the marquee and the listing and buckling exterior walls."

This notice concluded:

"In view of the badly damaged and deteriorated condition of the building which constitutes hazards to safety, health and public welfare you are hereby ordered to immediately vacate the building or cause the building to be vacated and to make arrangements to demolish and remove the building within 48 hours.

"All such work shall be completed within 90 days from the date of your receipt of this notice."

The complaint alleged that defendant had failed to demolish the building within the time demanded, that it constitutes a public nuisance, and that the defects which make it such cannot be remedied by repairs, as the necessary repairs would be so extensive as to amount to recon-

struction of the building. Though the notice was served under section 203 of the Building Code, and the action was brought to obtain compliance therewith, such reliance upon the ordinance did not preclude the City from asserting at the same time, as it did, that the building was in fact a public nuisance which should be abated by demolition after trial of the facts. *City of Sturgeon* v. *Wabash Ry.*, 223 Mo. App. 633, 17 S.W. 2d 616; see also *City of Nashville* v. *Weakley, supra.* On the pleadings, proof, and findings, this case amounts to no more than the abatement of a common law nuisance after trial of the issues. The court below concluded, *inter alia*:

"9. The said building was at all times material to this action, and is, a public nuisance at common law." This conclusion being fully supported by the findings and evidence, it is unnecessary for this court to rule on other matters. *Stoetzner* v. *City of Los Angeles, supra.*

As we have said, the City itself has sought judicial determination that the nuisance exists, as found by the building superintendent. We interpret Ordinance No. 1803, *supra,* as contemplating just such course of action. *City of Houston* v. *Lurie, supra;* see also *New York Trap Rock Corp.* v. *Town of Clarkstown*, 299 N.Y. 77, 85 N.E. 2d 873. The decision of the building superintendent was not intended to be final but on the contrary the nuisance question was to be determined after a trial on the merits. *Polsgrove* v. *Moss*, 154 Ky. 408, 157 S.W. 1133; *State Board of Health* v. *Village of St. Johnsbury*, 82 Vt. 276, 73 Atl. 581, 584. The City Council, when it passed Ordinance No. 1803 authorizing court action to obtain compliance, must have known that no other hearing had been provided for; *cf., Magoon* v. *Lord-Young Engineering Co.*, 22 Haw. 327, *Di Maggio* v. *Mystic Building Wrecking Co.*, .............. Mass. .............., 166 N.E. 2d 213. It would have been futile to have provided for court action unless with

the object of supplying a hearing and having the nuisance question adjudicated. While the present case differs from *People* v. *Sholem,* 294 Ill. 204, 128 N.E. 377, which was an action to recover penalties decided against the plaintiff by a four to three decision, the reasoning of the dissent (per Cartwright, C.J.) at 381, is in accord with the cases cited at the beginning of this paragraph and is in point here. As there stated: "In my judgment the legislative intention in providing for a judicial inquiry was to permit the property owner to make a defense that his property was not in such condition as to endanger other buildings or property, and as so construed the act is free from any constitutional objection."

As to the argument that the summary proceeding, also provided for by the ordinance, is an adequate remedy at law, defendant manifestly is waiving his own contention under *Crossman, supra,* in making the argument. Assuming for purposes of argument that the *Crossman* rule is not recognized in this jurisdiction and that summary demolition cannot be enjoined purely because a hearing has not been afforded, nevertheless if the City employs the summary method the property owner can resort to equity to obtain an adjudication of his rights before his building is demolished, unless the emergency is such as to permit of no delay. *Magoon* v. *Lord-Young Engineering Co., supra; Golden* v. *Health Department,* 21 App. Div. 420, 47 N.Y. Supp. 623; *Western & A.R.R.* v. *City of Atlanta,* 113 Ga. 537, 38 S.E. 996; *Porter* v. *City of Lewiston,* 41 Idaho 324, 238 Pac. 1014, 1017; *New Hampshire Fire Insurance Co.* v. *Murray,* 105 F. 2d 212 (7th Cir.); *cf.,* where an administrative hearing had been afforded and no abuse of discretion was shown, *Horbach* v. *Butler,* 135 Neb. 394, 281 N.W. 804. So the summary method is not complete and does not make a suit in equity inappropriate.

It has been argued that, by suing under the ordinance, the City has deprived defendant of the right to a jury trial of the fact that the nuisance exists. This argument is based upon a misassumption as to the nature of the suit. As we have said, the City itself has sought trial of the facts and judicial determination that the nuisance exists. Defendant was not precluded from pursuing in the suit brought by the City the right of jury trial if any pertained to him. Defendant made no such demand and accordingly at all events waived any question as to the right to jury trial. H.R.C.P., Rule 38. The question whether the cause of action was essentially one at law for a jury, so far as the ascertainment of the existence of a public nuisance was concerned, therefore has not been preserved for review. *Groome* v. *Steward,* 142 F. 2d 756 (D.C. Cir.) ; 2 Moore, *Federal Practice,* § 2.02(1) (2d ed.) ; 5 *id.* §§ 38.04, 38.05, 38.07(1), 38.13, 38.24(1).

As to the effect of a criminal penalty having been provided by the Building Code (see annotations in 40 A.L.R. 1145, 91 A.L.R. 315; 5 Moore, *Federal Practice,* § 38.24(3) ; *McBryde Sugar Co.* v. *Andrade,* 22 Haw. 578) this question has been eliminated by the ordinance and statutes. So, also, the power of the City to abate this nuisance and to resort to equity for that purpose is established, whatever question might otherwise have existed as to the authority in this area of a municipal corporation (see *Georgetown* v. *Alexandria Canal Co.,* 12 Peters (37 U.S.) 91).

The City Council has been empowered:

"To make and enforce * * * all necessary ordinances covering * * * condemnation of unsafe structures * * *." R.L.H. 1955, § 149-86(1).

"To enact and enforce all ordinances necessary to prevent or summarily remove nuisances * * *." R.L.H. 1955, § 149-86(6).

R.L.H. 1955, § 215-18, as amended by S.L. 1957, Act 287, further provides:

"§ 215-18. *Circuit judges at chambers.* The judges of the several circuit courts shall have power at chambers within their respective jurisdictions, but subject to appeal to the circuit and supreme courts, according to law, as follows:

\* \* \*

"(1) To enjoin or prohibit any violation of the laws of the State, or of the ordinances of the various counties, upon petition of the attorney general of the State, or the various county attorneys, even if a criminal penalty is provided for violation of the laws or ordinances."

These provisions place beyond question the right of the City to a mandatory injunction to remove an unsafe structure that is a nuisance at common law, as judicially determined. *City of Sturgeon* v. *Wabash Ry., supra.* The ordinances, in the case at hand, simply show the authority for the suit. Under the above-quoted provisions the City's power to act summarily is additional and not exclusive; *cf., Billings Hotel Co.* v. *City of Enid,* 53 Okla. 1, 154 Pac. 557.

The provision of section 215-18(1), *supra,* for "petition of the attorney general of the State, or the various county attorneys" does not signify that the officers named will themselves be plaintiffs. *Village of Bennington* v. *Hawks,* 100 Vt. 37, 134 Atl. 638, 50 A.L.R. 983. A county attorney seeking enforcement of a county ordinance will sue in the name of the county. Upon consideration of R.L.H. 1955, §§ 149-192 and 149-195, laws in pari materia, it appears that the words "upon petition of \* \* \* the \* \* \* county attorneys" (§ 215-18(1)), "the city and county attorney may, in the name of the city and county, bring appropriate action," (§ 149-192), "the city and county

attorney may institute an action to * * * abate any viola-, tion" (§ 149-195), are used indiscriminately and mean the same thing. In this case, at the end of the complaint there appeared the typed name of the corporation counsel (the present title of the City and County Attorney under the City Charter, R.L.H. 1955, 1960 Supp., App. note 8), with the signature of his deputy, who represented the corporation counsel in signing the complaint, the exact style being:

"THE CITY AND COUNTY OF HONOLULU,
a municipal corporation, by Ralph S. Inouye,
Its Building Superintendent,
                                    Plaintiff
By NORMAN K. CHUNG
        Corporation Counsel
By /s/ David H. C. Lee
        Deputy Corporation Counsel
        Honolulu Hale, Honolulu, Hawaii
        Its Attorneys"

The name of the corporation counsel should have appeared in the title along with that of the building superintendent, as in *Taylor* v. *City and County*, 25 Haw. 632. However, the defect is not fatal. As stated in an annotation in 135 A.L.R. 325 at 335:

"One may amend a complaint or declaration by substituting a plaintiff who sues for the use or benefit of the original plaintiff even in jurisdictions where it is not ordinarily regarded as proper to effect an entire change of plaintiffs by amendment."

Thus, even though in *Campbell* v. *Steiner*, 20 Haw. 365, it was held to be a fatal defect in the complaint that Marston Campbell, Superintendent of Public Works, was designated as plaintiff when the designation should have been Territory of Hawaii by Marston Campbell, Superintendent of Public Works, that decision is inapplicable

here, the City and County of Honolulu having been properly designated as plaintiff. The mistake in failing to name the corporation counsel as an officer bringing the action on behalf of the City and County is one that could have been corrected, and no point having been made of it the defect has been waived. H.R.C.P., Rule 12(h).

By the decree entered herein on August 25, 1960 defendant was ordered to complete the demolition of the building on or before October 31, 1960. This portion of the decree was stayed by this court until further order, which now is made. The stay shall continue for fifteen days after remand or as further extended by the trial court, it being intended to allow a period in which the appellant may apply to the trial court for, and the trial court may make such modification of the decree as to it may appear just and reasonable.

Affirmed and remanded with direction to proceed in accordance with this opinion.

*James A. King* (*Bouslog & Symonds* on the briefs) for defendant-appellant.

*David H. C. Lee*, Deputy Corporation Counsel (*Norman K. Chung*, Corporation Counsel, and *Henry H. Shigekane*, Deputy Corporation Counsel, on the briefs) for plaintiff-appellee.

### CONCURRING OPINION OF MIZUHA, J.

Believing that the opinion should be based solely on the finding of the trial court that the building was a public nuisance at common law and that the appellant had waived his right to a jury trial, H.R.C.P., Rule 38, I concur in the result.